COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Willis and Senior Judge Hodges
Argued at Norfolk, Virginia


EARL VALENTINE BRANCHE, S/K/A
 EARL VALENTINE BRANCH
                                        OPINION BY
v.          Record No. 0780-96-1    JUDGE SAM W. COLEMAN III
                                      SEPTEMBER 2, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Jerome B. Friedman, Judge

            James O. Broccoletti (Zoby & Broccoletti, on
            brief), for appellant.

            Monica S. McElyea, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


     In this criminal appeal, the defendant challenges the

constitutionality of the statutory scheme found in Code

§§ 18.2-29 and 18.2-346.  Code § 18.2-29 provides that a person

who solicits another to commit a felony, in this case oral

sodomy,[1] is guilty of a Class 6 felony.  Under Code § 18.2-346, a

person who solicits another to commit oral sodomy for money or

its equivalent is guilty of a Class 1 misdemeanor.  The defendant

contends that this statutory scheme violates the Equal Protection

Clause of the Fourteenth Amendment because it classifies those

instances of oral sodomy that are typically engaged in by

homosexual males as a felony where the same conduct undertaken by

a female prostitute is classified as a misdemeanor.  He further

---

     [1]Code § 18.2-361 provides that sodomy is a Class 6 felony.

contends that the City of Virginia Beach Police Department has selectively enforced the criminal solicitation statute against male homosexuals in violation of the Equal Protection Clause. Lastly, he asserts that the evidence was insufficient to support his conviction. For the reasons that follow, we affirm.

<u>BACKGROUND</u>

On December 28, 1994, Detective Edgar M. Cruz was investigating criminal solicitations at Redwing Park in Virginia Beach. As Detective Cruz, who was working undercover, drove into the park, he saw the defendant sitting in a vehicle facing the men's restroom. Cruz made eye contact with the defendant, who then went into the restroom. When the detective entered the restroom, he observed the defendant seated in a doorless stall on the far side of the restroom. As Cruz stood in front of the urinal, the defendant peered around the stall and made eye contact with Cruz.

Cruz left the restroom when another man entered, but returned later and found the defendant still seated in the stall area. When Cruz re-entered the restroom, the defendant stood and "began [pointing] toward his groin area while he was looking at [Cruz's] groin area." The defendant whispered "show it to me" to the detective while staring at the detective's groin area. Cruz told the defendant that he was afraid someone would come into the restroom and suggested that they go outside. The defendant agreed and followed Cruz into the woods surrounding the restroom.

2

Once outside, Detective Cruz sat down on a bench, but the defendant motioned for Cruz to go further into the woods. After they stopped, the defendant "reached down and touched the outside of [Cruz's] pants on the groin area and rubbed [him] once there." At that time, Cruz told the defendant that "there were a few things [he] did not want to do." When the defendant asked what Cruz did not want to do, Cruz said he did not like anal sex; the defendant said that he did not like it either. Detective Cruz then asked the defendant what he wanted to do, and the defendant said, "How about blowing?" Cruz asked, "Who? Me to you or you to me?" The defendant replied, "How about both?" and immediately reached for Cruz's groin area. Before the defendant touched him, Cruz identified himself as a police officer and arrested the defendant. After Cruz advised the defendant of his <u>Miranda</u> rights, he asked the defendant if he would have requested money in return for oral sex. The defendant said that he would not have done so. The defendant was charged and convicted of criminal solicitation, a Class 6 felony, in violation of Code § 18.2-29.

STATUTORY SCHEME

Under Code § 18.2-29, soliciting an individual to commit a felony is a Class 6 felony.[2] Under Code § 18.2-361, oral sodomy is a Class 6 felony. <u>See</u> Code § 18.2-361(A) ("If any person

---

[2]"Any person who commands, entreats, or otherwise attempts to persuade another person to commit a felony, shall be guilty of a Class 6 felony." Code § 18.2-29.

3

. . . carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony . . . ."). Code § 18.2-346, the statute prohibiting prostitution, states that:

> [a]ny person who, for money or its equivalent, commits . . . any act in violation of Code § 18.2-361 [the sodomy statute], or offers to commit . . . any act in violation of § 18.2-361 and thereafter does any substantial act in furtherance thereof, shall be guilty of being a prostitute, or prostitution, which shall be punishable as a Class 1 misdemeanor.

The appellant contends that the statutory scheme outlined in Code §§ 18.2-29 and 18.2-346 irrationally discriminates between women who engage in prostitution and homosexual men. The unfairness in the scheme, according to the appellant, is that females who solicit another to commit an act of oral sodomy for money can be convicted only of a misdemeanor, see McFadden v. Commonwealth, 3 Va. App. 226, 230, 348 S.E.2d 847, 849 (1986), whereas men who solicit another to commit an act of oral sodomy, not for money, may be convicted of a felony.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person . . . the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). However, the United States

4

Supreme Court "has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways." Reed v. Reed, 404 U.S. 71, 75 (1971). See also Rostker v. Goldberg, 453 U.S. 57, 80 (1981) ("The Constitution requires that Congress treat similarly situated persons similarly, not that it engage in gestures of superficial equality."); Rinaldi v. Yeager, 384 U.S. 305, 309 (1966) ("'The Constitution does not require things which are different in fact . . . to be treated in law as though they were the same.'") (quoting Tigner v. Texas, 310 U.S. 141, 147 (1940)). Where individuals are not similarly situated, courts need not engage in the traditional equal protection analysis by applying either strict scrutiny, intermediate scrutiny, or the rational basis test. See, e.g., Schweiker v. Hogan, 457 U.S. 569, 590 (1982) (holding that, for purposes of Medicaid benefits, "the wealthy and the poor are not similarly situated and need not be treated the same"); Rostker, 453 U.S. at 80 (holding that men and women are not similarly situated for purposes of military draft registration); Schlesinger v. Ballard, 419 U.S. 498, 508-09 (1975) (holding that men and women are not similarly situated for purposes of military promotions); Gunter v. Virginia State Bar, 241 Va. 186, 191, 399 S.E.2d 820, 823 (1991) (finding that accused was not similarly situated with other members of his class); Carter v. Carter, 232 Va. 166, 170-71, 349 S.E.2d 95, 98 (1986) (holding that foreign judgment creditors are not similarly

situated with domestic judgment creditors).

By enacting a statute that forbids prostitution and another which forbids solicitation to commit a felony, the General Assembly has not drawn a distinction or made a classification between individuals who are similarly situated. The statutes classify or draw distinctions between two types of behavior. The statutes do not classify or draw distinctions between people of the same or a similar group or class who commit the same or similar acts. Under the statutory scheme, all persons, male or female whether heterosexual or homosexual, who solicit another to commit an act of sodomy are guilty of a Class 6 felony. Similarly, all persons, males or females, whether heterosexual or homosexual, who solicit a person to engage in certain sexual acts for money, including oral sodomy, are guilty of a misdemeanor. Both heterosexual males and females and homosexual males and females may violate either statute and, under both statutes, all persons, regardless of sexual orientation, are treated in the same fashion.

The fact that solicitation to commit prostitution is a misdemeanor and is, therefore, considered a less serious crime than solicitation to commit a felony, which includes solicitation to commit sodomy, does not create an impermissible classification between groups of people similarly situated.

> A belief that an [act of the General Assembly] may be inequitable or unwise is of course an insufficient basis on which to conclude that it is unconstitutional. Moreover, the validity of a broad legislative

6

> classification is not properly judged by
> focusing solely on the portion of the
> disfavored class that is affected most
> harshly by its terms.

Schweiker, 457 U.S. at 589.  The General Assembly, to whose judgment such matters are committed, has provided that persons who solicit others to commit a felony, including sodomy, are guilty of a felony.  However, the criminal solicitation statute also covers offenses other than solicitation to commit oral sodomy.  The General Assembly has also determined that those persons who engage in prostitution, including persons who solicit others to engage in oral sodomy for money, are guilty of only a misdemeanor.  The defendant correctly observes that persons who solicit oral sodomy may be guilty of either a felony or a misdemeanor depending upon whether they seek remuneration for the act.  While both statutes prohibit solicitation to engage in the act of sodomy, one statute is directed at those who do so for remuneration and the other is directed at those who do so without a request or demand for remuneration.  By recognizing different motivations, the statutes create separate classifications of prohibited conduct.  The persons affected by the statutes are not similarly situated and the General Assembly may without judicial scrutiny under the Equal Protection Clause, assign distinct punishments for different crimes.  See McFadden, 3 Va. App. at 230, 348 S.E.2d at 849.

Because the two groups of individuals proscribed by the statute are not engaged in the same activity, the General

7

Assembly's decision to punish one group more severely than the other does not violate our constitutional principle of equality. Thus, we reject the defendant's claim that the statutory scheme violates the Equal Protection Clause.

The appellant next contends that the Virginia Beach Police Department engages in purposeful, selective enforcement of Code § 18.2-29 by arresting only homosexual men for violating the anti-sodomy statute, thereby violating the Equal Protection Clause.

Code §§ 18.2-29 and 18.2-361, on their face, are gender neutral and apply equally to males and females. If either a heterosexual male or female solicited another to engage in a consensual act of oral sodomy, he or she would be subject to prosecution for felony criminal solicitation. The decision by the state to prosecute individuals for certain crimes may not be based on "an unjustifiable standard such as race, religion or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456 (1962). Thus, if an accused can prove that a facially neutral law is being applied in a discriminatory manner, he or she has an equal protection claim.

In order to prove that a person or group of persons are being selectively prosecuted in violation of the Equal Protection Clause, an accused must present clear evidence to rebut the presumption that the state has not violated his or her equal protection rights. Id. The appellant must "demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to

9

'a practical denial' of equal protection of the law." <u>United States v. Armstrong</u>, 116 S. Ct. 1480, 1486 (1996) (quoting <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 373 (1886)). The accused must "show both . . . a [resultant] discriminatory effect and that [the discriminatory effect] was motivated by a discriminatory purpose." <u>Wayte v. United States</u>, 470 U.S. 598, 608 (1985).

Here, the defendant failed to present persuasive evidence that the Virginia Beach Police Department purposefully discriminates against homosexual males in the enforcement of Code §§ 18.2-29 and 18.2-361. Officer Cruz testified that the police were conducting sting operations in the city parks and in several local malls because they had received numerous complaints about male homosexuals soliciting in restrooms. He further testified that, to his knowledge, female undercover officers had never been utilized to target female homosexual offenders. However, the defendant offered no evidence that female homosexual offenders could have been arrested had the police targeted them. The police do not intentionally discriminate against one gender by the absence of attempts to detect and apprehend offenders of the other gender, when no evidence is presented that offenders of the other gender are engaging in similar criminal behavior. The defendant offered no evidence that similarly situated females could have been prosecuted, but were not. <u>See</u> <u>Armstrong</u>, 116 S. Ct. at 1486. Thus, the defendant has not met his burden of proof on this issue.

10

## SUFFICIENCY

In determining whether evidence is sufficient to support a conviction, "we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Criminal solicitation involves the attempt of the accused to incite another to commit a criminal offense.  "It is immaterial whether the solicitation is of any effect and whether the crime solicited is in fact committed. . . .  The gist of [the] offense is incitement."  Huffman v. Commonwealth, 222 Va. 823, 827, 284 S.E.2d 837, 840 (1981).  The appellant contends that the evidence was insufficient to prove solicitation to commit oral sodomy because Officer Cruz offered no explanation as to the meaning of the term "blowing" as used by Branche when he asked Cruz, "How about blowing?"

We hold that the evidence is sufficient to prove that the defendant intended to induce Officer Cruz to engage in oral sodomy.  The defendant admitted to Cruz that he was outside the restroom "looking for oral sex."  Furthermore, the defendant stared, pointed, and repeatedly attempted to grab Cruz in the groin area and asked Cruz to expose his penis.  When Cruz told the defendant he was afraid someone would enter the restroom, the defendant encouraged him, saying, "it would be okay . . . no one would know."  When Cruz and the defendant were in the wooded area

11

surrounding the restroom, the defendant touched Cruz in the groin area.  When Cruz told the defendant he did not like anal sex, the defendant said, "How about blowing?"

From the evidence, the fact finder could reasonably have inferred that the defendant was soliciting Cruz to commit an act of oral sodomy.  Slang expressions, including the vernacular for sexual activity, are well known and matters of common knowledge.  The fact finder, in this case the trial judge, could reasonably have inferred from the circumstances and the defendant's request, "How about blowing?" that the defendant was soliciting to commit oral sodomy.  See Anderson v. State, 235 S.E.2d 675, 676-77 (Ga. App. 1977).  "It would be completely unrealistic to require that witnesses, many of whom are unlearned or have limited vocabularies, describe the acts constituting the commission of crimes in statutory or technical language in order to prove the commission of such acts."  Id.  Accordingly, we hold that the evidence was sufficient to prove that the defendant was soliciting oral sodomy from Officer Cruz.

For the reasons stated, we affirm the conviction.

Affirmed.