COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Senior Judge Baker
Argued at Richmond, Virginia


JOSEPH C. BONEY
                                              OPINION BY
v.    Record No. 0591-98-2           JUDGE RICHARD S. BRAY
                                               JUNE 1, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
                James F. D'Alton, Jr., Judge Designate

          Jerry E. Waldrop (C. Gilbert Hudson, Jr., on
          brief), for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Joseph C. Boney (defendant) was convicted by a jury of

burglary, first-degree murder, malicious wounding, and related

firearms offenses.  Defendant complains on appeal that the trial

court erroneously admitted evidence of prior offenses and

related misconduct.[1]  We agree and reverse the convictions.

     In accordance with well established principles, we review

the record on appeal in the light most favorable to the

Commonwealth.  See Archer v. Commonwealth, 26 Va. App. 1, 11,

492 S.E.2d 826, 831 (1997).

---

     [1] Because we reverse on this issue, we decline to address
the remaining assignments of error raised on appeal.

Defendant and his wife, Anita Boney, were married in 1989, and four children were born to their union. In October, 1996, Mrs. Boney separated from defendant, relocating with the children to a rental house in Emporia.[2] Although defendant remained in the former marital home, Mrs. Boney "saw him all the time, just about every day." Defendant "would come to any window at the house that he could look into to see what [she] was doing," "come by and see the children," and sometimes "park his car outside [Mrs. Boney's house] and sleep in the car." During the week preceding the instant offenses, defendant asked Mrs. Boney "what James Ricks [the murder victim] was doing at [her] house," and threatened, "don't ever let me catch James at your house or I'm going to kill him."

In the late evening of December 21, 1996, Mrs. Boney arrived home from work and "saw [defendant] pulling away from [her] driveway." Defendant soon returned, however, "knocked on the door," and was told by Mrs. Boney that "he could [not] come in." Defendant inquired, "where was the children?" Mrs. Boney answered that "they were at [her] mother's house," and he drove away. Within minutes, defendant appeared at Mrs. Boney's bedroom window, again questioned her about the children, and, once more, left the area.

---

[2] Mrs. Boney was the sole tenant on the lease agreement, and the landlord stipulated that defendant did not reside with her.

-

Shortly after midnight, defendant returned to the window and observed Mrs. Boney in bed with a man, later identified as Ricks, apparently "making love." Defendant recalled that he immediately entered the house through the rear door, "seen two peoples jump off the bed, no clothes or nothing" but, "that's all [he] remember[ed] right there." Mrs. Boney testified that she and Ricks "were talking" in the bed, following sexual intercourse, and "heard . . . the screen door crack . . . [and] a very loud, kicking, banging noise" as defendant "broke through the door." The couple "jump[ed] out of bed," naked, and Ricks fled through the living room and "out the front door" with defendant in pursuit, shouting "go ahead you m---- f----- and run, I'm going to get you." Mrs. Boney "heard some shots," and Ricks was found nearby, dead from gunshot wounds inflicted by the defendant.

Moments later, Mrs. Boney saw defendant approaching the kitchen window. Fearful, she began "pushing the back door," previously damaged by defendant, "to keep him from coming into the house." However, defendant soon overpowered Mrs. Boney and entered the home, holding a gun "in an upward motion." Once inside, defendant turned toward Mrs. Boney, declared, "I told you if . . . I ever saw you with anybody else I would get you too," and shot her. Defendant watched Mrs. Boney "fall down between the kitchen table and the back door [and] walked away." Wounded, Mrs. Boney "crept out of the back door . . . to [her]

-

neighbor's house," summoned police, and defendant was arrested at the scene.

During a hearing on several pretrial motions, the Commonwealth urged the court to permit evidence at trial of defendant's "prior bad acts and conduct relating to" Mrs. Boney, "to prove his motive, . . . intent and . . . conduct and feeling" toward her. Despite repeated references by the prosecutor to "assaults," "similar incident[s]," and "other threats," crimes and prior bad acts of the defendant "involving" Mrs. Boney, dating to 1986, the hearing record provides few details of such misconduct. Nevertheless, over defendant's objection, the court ruled that "in light of . . . the history between the parties," it would allow evidence of assaults by defendant that resulted from "incidents" in 1992 and 1993.

At trial, Mrs. Boney initially testified that "quite a few times" she had been "in a situation with [defendant] and a gun," later recalling an "incident" in 1993 which "involved" defendant, a man identified only as Larry Fields, and "a gun." She was unsure of any offenses committed by defendant, but "kn[ew] that he stayed in jail for awhile." After defendant stipulated "that he was convicted of an assault and battery on Larry Fields," the court noted that, "[t]he fact that there was a conviction is in evidence." Mrs. Boney also vaguely alluded to an "incident" in 1992 between defendant and herself.

-

The court instructed the jury, "You may consider evidence that the defendant committed offenses other than the offense for which he is on trial only as evidence of the defendant's motive and intent in connection with the offense for which he is on trial and for no other purpose." The court also instructed the jury on both first and second-degree murder, but denied defendant jury instructions on manslaughter and unlawful wounding. Defendant was convicted of first-degree murder, malicious wounding, breaking and entering with the intent to commit a felony while armed with a deadly weapon, and related firearm offenses, the subject crimes. He now appeals, arguing that the court erroneously admitted evidence of the prior misconduct and assault conviction.

It is well established that evidence tending to show that defendant committed a prior crime is generally inadmissible. See, e.g., Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970); Burley v. Commonwealth, 29 Va. App. 140, 144, 510 S.E.2d 265, 267 (1999). Such evidence invites confusion of the issues and unfair surprise and suggests criminal propensity, circumstances that compromise the fact-finding process and the presumption of innocence, to the distinct prejudice of an accused. See Wilkins v. Commonwealth, 18 Va. App. 293, 297, 443 S.E.2d 440, 443 (1994) (en banc); see also Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998). However, "the 'general rule . . . must sometimes

-

yield to society's interest in . . . truth-finding . . .,' and numerous exceptions allow evidence of prior misconduct '[w]henever the legitimate probative value outweighs the incidental prejudice to the accused.'"  Wilkins, 18 Va. App. at 297, 443 S.E.2d at 443.

Thus,

> [e]vidence that tends to establish a fact at issue is relevant and material and, therefore, admissible, if its probative value is not outweighed by any prejudicial effect.  Despite the prejudice "inherent" in proof that the accused has committed other crimes, this rule is no different when such evidence is offered to establish knowledge or intent, provided there exists a "relation or connection" between the prior misconduct and the facts in issue which sufficiently establishes relevancy and materiality.

Id. at 297-98, 443 S.E.2d at 443.

Accordingly, "[e]vidence of 'other crimes' is relevant and admissible if it tends to prove any element of the offense charged," including the intent of the accused.  Guill, 255 Va. at 138, 495 S.E.2d at 491 (citation omitted).  However, the admissibility of evidence to establish intent requires "'a causal relation or logical or natural connection between the two acts, or they . . . form parts of one transaction,'" with sufficient probative value to overcome the incidental prejudice to the accused.  Id. at 139-40, 495 S.E.2d at 491-92.

Here, the evidence before the jury through Mrs. Boney's testimony disclosed only that defendant had been convicted in

-

1993 for an assault upon Larry Fields, a man unrelated to the instant prosecution, which involved "a gun." Nothing in the trial record established any nexus between Fields, defendant, Mrs. Boney, or the murder victim, Ricks. Similarly, Mrs. Boney was permitted to mention an unexplained "incident" between defendant and herself in 1992. Clearly, absent evidence that established a rational relationship between such conduct and the instant offenses, Mrs. Boney's testimony was not probative of defendant's motive or intent in shooting either Ricks or herself and, therefore, was without proper evidentiary value. Nevertheless, the testimony suggested that defendant had previously been "involved" with guns, an unrelated violent encounter with another man, and other "situations" with Mrs. Boney, all irrelevant to the instant prosecution but highly prejudicial to defendant. Thus, the court erroneously admitted the testimony into evidence.

Contrary to the Commonwealth's argument, the court's instruction that the jury consider other "offenses . . . only as evidence of . . . defendant's motive and intent in connection with the offense . . . on trial" does not cure the error. The jury was exposed to inadmissible evidence, unworthy of consideration in any issue at trial. The instruction limiting the utility of such evidence expressly approved improper consideration by the jury, albeit for a restricted purpose. A

-

jury cannot be presumed at once to follow a direction to consider improper evidence and remain unaffected by its content.

We likewise find no merit in the Commonwealth's argument that the error was harmless. "[U]nless 'it plainly appears from the record and the evidence given at the trial that' the error did not affect the verdict," we must reverse the conviction. Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (citing Code § 8.01-678). "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Id. "The effect of an error on a verdict varies widely [and] . . . [e]ach case must, therefore, be analyzed individually . . . ." Id. at 1009, 407 S.E.2d at 913.

The jury convicted defendant of first-degree murder and malicious wounding, offenses that require proof of malice beyond a reasonable doubt, and recommended sentences of life and fifteen years, respectively. Mrs. Boney was permitted to improperly reference prior "incidents" involving defendant and "guns," including a specific conviction for assault arising from an unrelated encounter years earlier. Under such circumstances, we are unable to conclude that the record "plainly" demonstrates convictions and sentences free from the influence of inadmissible evidence.

-

Accordingly, we reverse the convictions and remand the matters to the trial court for a new trial, consistent with this opinion, if the Commonwealth be so advised.

Reversed and remanded.