COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


ROBERT SANTORA, S/K/A
 ROBERT J. SANTORA
                                    MEMORANDUM OPINION* BY
v.   Record No. 2962-98-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                       FEBRUARY 22, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Thomas A. Fortkort, Judge

        John Clifton Rand for appellant.

        Eugene Murphy, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


    Robert J. Santora (appellant) was convicted in a jury trial

of solicitation to commit murder and solicitation of the use of

a firearm in that murder.  On appeal, he contends the trial

court erred in:  (1) failing to grant his motion to strike; (2)

permitting the Commonwealth to offer evidence of a date

different than that alleged in the indictment; (3) finding that

evidence of his prior threats to kill the intended victim were

relevant and probative; (4) denying his motion for a

continuance; and (5) denying his motion for bail and to suspend

execution of sentence.  For the following reasons, we affirm.

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

I.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that appellant and his ex-wife, Julia Clark (Clark), divorced in 1988 and appellant was granted sole custody of their two minor children.  In the fall of 1993, Clark contested previous rulings regarding visitation and custody.  In 1994, Clark acquired joint custody of the children.  In 1995, Clark petitioned for and gained sole custody of the older child, and in 1996, she acquired sole custody of the younger child.

Clark testified that around "the '94 time frame," appellant threatened to kill her before he would allow her to gain custody of the children.  Clark indicated that appellant made this threat "[a]t least two or three times."

In October 1997, appellant's visitation rights were terminated and a no contact order was entered.  Appellant was jailed in March 1998 for failure to pay support.  At that time, James Robichaud (Robichaud), another inmate in the jail, befriended appellant.  Appellant requested Robichaud to get him an unregistered firearm that could not be traced.  Appellant talked about killing Clark, the circuit court judge presiding

-

over the custody proceedings and the guardian ad litem for the children. Appellant made sure that Robichaud "had his phone number" and address. After his release, Robichaud located appellant and "asked him if he still wanted the gun." Appellant met with Robichaud the next night and gave him $300 to purchase a gun "to kill his [ex-]wife." Robichaud used the money to buy drugs.

Robichaud later contacted appellant and reopened discussions about the gun. At that time, appellant discussed his plan to murder or have someone murder Clark. Eventually, appellant indicated that Clark had to be killed before an impending October 16, 1997 support hearing or he would be returned to jail for contempt. Robichaud feared that Clark would be killed if he did nothing and went to the police. The police provided Robichaud with an inoperable gun and videotaped the September 12, 1997 meeting when Robichaud delivered the gun to appellant.

At trial, the Commonwealth presented the testimony of Robichaud and introduced the videotaped transaction between Robichaud and appellant on September 12, 1997. Additionally, the trial court admitted an audiotape of a conversation between appellant and Robichaud that occurred several hours before the videotaped transaction. In that conversation, Robichaud informed appellant that he had "picked up a toy" that "will do the job," to which appellant replied, "Great, great." During

-

the conversation, appellant agreed to "swing by with the car and pick [Robichaud] up" around 6:30 p.m.

In his defense, appellant testified that he had never discussed killing his ex-wife or the other two individuals. He said that he had given Robichaud $200 to buy tools. Appellant stated that Robichaud was the individual who suggested to him that he kill his ex-wife. Finally, appellant testified that he did not know that Robichaud had a gun in the bag on the day of the exchange and that he took the gun to prevent danger to children and other bystanders. The jury rejected appellant's testimony and found appellant guilty of solicitation to commit murder and solicitation of the use of a firearm in that murder.

## II.

In the indictments the grand jury charged appellant with the following:

> On or about the 12th day of September, 1997, in the County of Arlington, ROBERT SANTORA did command, entreat, or otherwise attempt to persuade another person to commit a felony, to wit: murder of his wife.

In a pretrial hearing and at trial, the Commonwealth's Attorney explained that the indictment was based on appellant's asking Robichaud to supply a gun to be used to murder Clark. Because an accessory before the fact may be indicted and tried the same as the principal, the Commonwealth argued that appellant solicited Robichaud to commit a felony, to-wit: being an accessory before the fact to the murder of Clark. On appeal,

-

appellant contends that because the Commonwealth failed to prove that Robichaud was an accessory before the fact, the evidence was insufficient to convict appellant of solicitation to commit the murder.

When a defendant presents evidence in his own behalf, after the trial court denies his motion to strike made at the conclusion of the Commonwealth's case-in-chief, the reviewing court considers the entire record to determine whether the evidence was sufficient.  See Sheppard v. Commonwealth, 250 Va. 379, 387, 464 S.E.2d 131, 136 (1995).  Having presented evidence in his defense, appellant waived the right to rely solely upon the Commonwealth's evidence on his motion to strike. Accordingly, we consider all the evidence in determining the sufficiency of the evidence.

Code § 18.2-29, the statute under which appellant was convicted, provides that "[a]ny person who commands, entreats, or otherwise attempts to persuade another person to commit a felony, shall be guilty of [criminal solicitation,] a Class 6 felony."  Thus, "[c]riminal solicitation involves the attempt of the accused to incite another to commit a criminal offense." Branche v. Commonwealth, 25 Va. App. 480, 490, 489 S.E.2d 692, 697 (1997).  "'It is immaterial whether the solicitation has any effect and whether the crime solicited is in fact committed. . . . The gist of [the] offense is incitement.'"  Id. (quoting Huffman v. Commonwealth, 222 Va. 823, 827, 284 S.E.2d 837, 840

-

(1981)).  "The act of solicitation may be completed before an attempt is made to commit the solicited crime."  Ford v. Commonwealth, 10 Va. App. 224, 226, 391 S.E.2d 603, 604 (1990).

In the instant case, the evidence proved that appellant entreated or persuaded Robichaud to procure an untraceable gun to be used to kill Clark.  Moreover, appellant told Robichaud the purpose for which he wanted the gun, thus making Robichaud subject to prosecution as an accessory before the fact to murder, because Robichaud procured the gun for that purpose.  It is immaterial whether the solicited crime had been completed, as the gravamen of the offense is the attempt to persuade another to commit an unlawful act.  Here, the Commonwealth properly characterized the wrongful act that appellant solicited Robichaud to commit, that is, being an accessory before the fact to the murder of Clark.  We find no error.

### III.

Appellant next contends the trial court erred in permitting the Commonwealth to introduce evidence of a different date than that alleged in the indictment.  He also argues that the Commonwealth improperly proceeded on a theory of the case different from that outlined in its response to his bill of particulars.  Appellant first raised these arguments in his post-trial motion to set aside the verdict.  The matter was never set for hearing before the trial court, and these issues were never presented to the trial court.  Having failed to

-

properly preserve the alleged error, his challenge is barred upon appeal.  See Rule 5A:18.  Additionally, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.  See Marlowe v. Commonwealth, 2 Va. App. 619, 622, 347 S.E.2d 167, 169 (1986) (holding that the Commonwealth may prove the commission of the crime on a date different from that alleged in the indictment); see also Pederson v. City of Richmond, 219 Va. 1061, 1067, 254 S.E.2d 95, 99 (1979) ("Solicitation may comprise a course of conduct, intended to induce another to act, that continues over an extended period.").

IV.

Appellant next contends the trial court erred in admitting evidence of his prior threats he made to Clark.  The threats were made during the spring of 1994, and the crimes were alleged to have occurred on September 12, 1997.  Accordingly, appellant argues that the threats were "too remote" to be relevant to the solicitation charges and were overly prejudicial.  We disagree.

"Once factual relevance has been established, the trial court may consider remoteness as one of the factors in determining evidentiary relevance of prior bad act evidence, but it should not withhold such evidence solely on the basis of remoteness unless the expanse of time has truly obliterated all probative value."  Lafon v. Commonwealth, 17 Va. App. 411, 419, 438 S.E.2d 279, 284 (1993).  "Whether evidence is so remote that

-

it lacks probative value is a matter resting largely within the discretion of the trial court."  Bunch v. Commonwealth, 225 Va. 423, 438, 304 S.E.2d 271, 279 (1983).

In the instant case, the evidence proved that appellant and Clark divorced in 1988 and that appellant was initially granted sole custody of their minor children.  However, the parties were locked in a custody dispute that lasted several years, and the threats to kill her related to that issue.  Appellant's threats were relevant to show the conduct and feeling of the accused towards Clark and the custody battle.  More importantly, it tended to explain appellant's motive for soliciting Robichaud. The record demonstrated ongoing and increased acrimony between appellant and Clark beginning in 1993 and culminating with Clark acquiring sole custody of the children in 1996.  Under these circumstances, the trial court did not abuse its discretion in finding that appellant's threats were not too remote and that its probative value outweighed any prejudice.  See, e.g., Falon, 17 Va. App. at 419-20, 438 S.E.2d at 284-85 (allowing testimony that the defendant had shown his friends how to "grab" a woman fourteen months before the crime); Moore v. Commonwealth, 222 Va. 72, 75-77, 278 S.E.2d 822, 824-25 (1981) (allowing the admission of sexual acts occurring twenty months before and three months after the date of the offense on trial); Brown v. Commonwealth, 208 Va. 512, 516-17, 158 S.E.2d 663, 667 (1968) (allowing the admission of acts of incestuous intercourse

-

occurring during a period of several years prior to the date of the offense on trial).[1]

                                   V.

Appellant argues that the trial court erred in denying his motion for a continuance because he was unable to access certain information from his computer which was in the custody of the Commonwealth.  Although the Commonwealth produced the computer, appellant could not access any of the files.  Accordingly, appellant concludes, he was denied the opportunity to adequately develop his defense and a continuance should have been granted. We disagree.

"The decision whether to grant a continuance is a matter within the sound discretion of the trial court."  Lowery v. Commonwealth, 9 Va. App. 304, 307, 387 S.E.2d 508, 509 (1990). The Virginia Supreme Court has established a two-pronged test for determining whether a trial court's denial of a continuance request is reversible error.  Under this test, we may reverse a trial court's denial of a motion for a continuance only if it appears from the record:  (1) that the court abused its discretion and (2) that the movant was prejudiced by the court's

---

[1] Boney v. Commonwealth, 29 Va. App. 795, 514 S.E.2d 810 (1999), cited by appellant, is factually distinguishable.  In that case, the Commonwealth presented evidence that three years prior to the offense charged the defendant had been convicted of assault.  We held that the assault involved "a man unrelated to the instant prosecution" and that "[n]othing in the trial record established any nexus" between the defendant, the victim and the unrelated assault victim.  Id. at 801, 514 S.E.2d at 813.

                                   -

decision.  See Cardwell v. Commonwealth, 248 Va. 501, 509, 450

S.E.2d 146, 151 (1994).  Evidence is considered material "only

if there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would

have been different."  Robinson v. Commonwealth, 231 Va. 142,

151, 341 S.E.2d 159, 164 (1986) (citation omitted).

"Exculpatory evidence" is defined as evidence that is "material

to guilt or punishment and favorable to the accused," Allen v.

Commonwealth, 20 Va. App. 630, 637, 460 S.E.2d 248, 251 (1995),

and includes impeachment evidence.  See United States v. Bagley,

473 U.S. 667, 676 (1985).

Here, the record establishes that on April 16, 1998, five

days before trial, appellant requested the trial court to grant

him access to his computer to recover certain computer records

necessary for his defense.  Counsel stated the following:

> [T]here's some evidence that he was . . .
> using the Internet to solicit hit men.
> There's some evidence that [he was] using
> his computer at the time that Mr. Robishaw
> [sic] tried to get him, that he was
> purposely using his computer, uh, to try to
> avoid Mr. Robishaw, other, some other facts
> that show what exactly he was doing on the
> computer that relate to this case.

Appellant's attorney indicated that he asked for the computer

records in discovery and the Commonwealth allowed counsel to

"fool with [the] computer."  Counsel stated that he was

unfamiliar with computers and, thus, he was unable to access the

information.  Defense counsel also acknowledged that appellant

-

made a specific request to the Commonwealth "as to some sort of directory" and, in response, he received a number of computer records on April 10, 1998. However, according to defense counsel, those records were "not, apparently, what [appellant] asked for in terms of relaying of a request through me." The trial court ordered the Commonwealth to take appellant's computer to the jail and allow him access to it.

On the day of trial, appellant told the trial court that the Commonwealth delivered the computer. However, he "was never able to access what was in the computer." Specifically, appellant asserted that he needed more than the two available electrical outlets and, therefore, he "was never able to boot the computer up" or get "what he wanted from the computer." The trial court directed the Commonwealth to have the computer brought to a room in the courthouse that contained sufficient plugs, and, "once he's properly set up and booted," to allow appellant the fifteen or twenty minutes he averred he needed to get the data.

On the second day of trial, appellant indicated that he "got on the computer" "for about 15, 20 minutes," but it did not "boot up." The evidence showed that the data on the hard drive was no longer accessible. However, the Commonwealth indicated that the information on the hard drive was earlier backed up in compressed form and could be accessed with the proper expertise. Before proceeding, the trial court directed appellant to make a

-

proffer as to what information he sought to recover and use at trial. Defense counsel proffered the existence of "Web pages that [appellant] was in the process of constructing, having to do with the three alleged victims." This evidence was intended to show that appellant "was making preparations to make public his anger toward these individuals" and that would be "extremely material" because a "rational person" would not commit a violent act on someone about whom he is constructing a Web page and "making angry statements." Defense counsel further proffered that computer data would establish that appellant "purposely tied the Internet up so that he wouldn't have to take" a telephone call from Robichaud and that he "didn't want anything to do with Mr. Robichaud." Such proof, argued appellant's attorney, would corroborate appellant's testimony. Finally, appellant proffered that computer records would confirm his "planned vacation to Florida, which would refute the statements of Mr. Robichaud that he simply intended to go to Florida to buy guns."

Later that afternoon, Vice Intelligence Detective Rimer testified that the data could be restored, but it would take a few days and possibly require technical assistance from an outside computer company. The trial court ruled as follows:

> There are several of those issues that you can address that the Commonwealth is not going to question, I assume. But the machine was running that day, I mean, they don't know one way or the other. . . .

-

> At this point, unfortunately, we're going to have to proceed without [the computer].

On appeal, appellant contends that the "evidence [he] sought was critical to his case because it involved a number of pieces of computer evidence which would have substantiated his testimony."  In support, appellant contends that computer records would have substantiated that he "purposely tied up his telephone by using the internet to avoid being called by Robichaud for their September 12 meeting."  He also contends that he would have presented Web pages on which he vented his anger on his alleged victims and "a variety of computer records substantiating his actions and movements which contradicted evidence of the Commonwealth."

Assuming such evidence existed and would have been admissible, the record fails to show that the evidence was exculpatory or that its absence prejudiced appellant.  Any evidence tending to show that appellant was using his computer, thereby tying up his telephone line, would not prove that he purposely did so to avoid Robichaud.  Moreover, Officer Jessup testified that Robichaud contacted him about appellant's solicitations "around the 10th, the 9th or 10th of September"; shortly thereafter, Jessup observed appellant and Robichaud "talking and working on [a] car" belonging to appellant. Finally, the September 12, 1997 audiotape of Robichaud's telephone call showed that appellant's answering machine

-

activated after the fourth ring, but when Robichaud identified himself and began to leave a message, appellant picked up the telephone and spoke with Robichaud. Appellant's act of overriding the answering machine, which acted as a screening device, picking up the telephone, and setting up a meeting with Robichaud later that day belied appellant's assertion that he tried to avoid talking with Robichaud.

The fact that appellant may have been precluded from presenting evidence that he prepared Web pages expressing his anger at Clark was not prejudicial. Moreover, such evidence was not exculpatory. The record was replete with evidence of appellant's enmity toward Clark. He had voiced threats against her and had been embroiled in a lengthy and bitter custody battle with her.

Regarding the "various computer records substantiating his actions and movements which contradicted evidence of the Commonwealth," appellant failed to allege in his petition what these records would show, what evidence they would contradict, and how they would have assisted his defense. At trial, appellant proffered that his calendar would show that he had scheduled a trip to Florida, not to procure firearms, but to vacation. The Commonwealth did not allege that appellant planned to purchase guns in Florida; it contended that appellant solicited Robichaud to procure a "clean" gun to use.

-

Based on appellant's proffer, the record fails to show that the evidence sought and allegedly contained on appellant's computer was material and would have made a difference in the outcome of the case. Therefore, appellant has failed to show how he was prejudiced. Accordingly, the trial court did not abuse its discretion in denying the motion for a continuance.

VI.

Finally, appellant argues that the trial court erred in failing to postpone execution of his sentence pursuant to Code § 19.2-319[2] and to rule on his motion for bail. Appellant's argument has not been properly preserved and, therefore, is barred on appeal. See Rule 5A:18.

At his September 11, 1998 sentencing hearing, appellant requested pursuant to Code § 19.2-319 that he be allowed "to remain in Arlington [County jail] pending his appeal preparation." Arguing that the statute was inapplicable, the Commonwealth's Attorney stated, "I think that's an appeal bond." Appellant's counsel responded, "It does appear to be, Your Honor. I have not looked at this and so I don't --" No further discussion of the matter occurred.

---

[2] Code § 19.2-319 provides that "[i]f a person sentenced by a circuit court to . . . confinement in the state correctional facility indicates an intention to apply for a writ of error, the circuit court shall postpone the execution of such sentence for such time as it may deem appropriate."

-

When appellant filed his post-trial <u>pro</u> <u>se</u> motions, his counsel included a motion to suspend sentence, but made no reference to bail. Only appellant's handwritten <u>pro</u> <u>se</u> motion mentioned bail. Appellant failed to schedule a hearing to present argument and allow the trial court to rule on the issue. Accordingly, it is barred on appeal. <u>See</u> Rule 5A:18.

For the foregoing reasons, appellant's convictions are affirmed.

<u>Affirmed.</u>

-