COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Frank and Humphreys
Argued at Chesapeake, Virginia


JOHN MAURCELLE LAW
                                              OPINION BY
v.   Record No. 0209-02-1       JUDGE ROBERT J. HUMPHREYS
                                           NOVEMBER 12, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                   Bruce H. Kushner, Judge

        Richard L. Kreger (Kreger & McBride, on
        briefs), for appellant.

        Virginia B. Theisen, Assistant Attorney
        General (Jerry W. Kilgore, Attorney General,
        on brief), for appellee.


     John Maurcelle Law appeals his conviction, after a bench

trial, for bribery of a witness in violation of Code

§ 18.2-441.1.  Law contends his conduct did not establish a

violation of the statute.  For the following reasons, we reverse

the judgment of the trial court.

                        I.  BACKGROUND

     On July 5, 2001, Celestine Riddick and her daughter, Nakia

Sykes, attended a preliminary hearing at the Chesapeake Juvenile

and Domestic Relations District Court, for a sexual assault case

in which Sykes was the victim.  Riddick and Sykes waited in the

lobby, outside the courtroom, prior to the hearing.  While they

were waiting, and just before the hearing began, Law, a family

friend of Riddick, approached her and began to engage in conversation. Law asked Riddick whether Sykes was her daughter and asked Riddick "what [had] happened with the case that [they] were sitting out there for." Although she had not been subpoenaed to testify at the hearing, Riddick told Law she "was not at liberty to discuss the case with him." Law then stated, "[I will] [g]ive you $500 to squash [the case], to keep the white man out of it." After overhearing Law's proposal, Sykes immediately informed the Commonwealth's attorney of the conversation.

The preliminary hearing began shortly thereafter. Riddick was sworn in as a potential witness for the Commonwealth, but she did not testify during the hearing.

Following the hearing, the judge questioned Law about his conversation with Riddick. Law denied that the conversation occurred and denied knowing Riddick.

Law was subsequently indicted for "feloniously giv[ing], offer[ing] or promis[ing] money or a thing of value to another with the intent to prevent such person from testifying in a civil or criminal proceeding or to cause such person to testify falsely, in violation of Code § 18.2-441.1." During his trial, Law conceded that he knew Riddick, but denied having made the statement at issue. He testified that he claimed not to know Riddick, when questioned after the preliminary hearing, because he was "afraid."

-

After the Commonwealth's evidence, and again at the close of all the evidence, Law raised a motion to strike contending the Commonwealth had failed to establish that Riddick was a witness and/or that Law, by his statement, intended to induce her to testify falsely or to absent herself from the proceeding. The Commonwealth argued that Riddick was a potential witness and that the language used by Law, to "squash the case," was an attempt to persuade both Riddick and her daughter not to testify in order "to squash the charges." The trial court held:

> the Court is convinced the intent was clear
> of Mr. Law, that the testimony of Ms.
> Riddick could have been required to confirm
> the age of her daughter as a minor, and as a
> consequence, I find that the evidence is
> sufficient to find the defendant guilty
> beyond a reasonable doubt.

The court then convicted Law of the charge.

Prior to sentencing, Law filed a motion to set aside the conviction "upon the grounds that the evidence failed to support a conviction of the offense under the statute as a matter of law." During the sentencing hearing, the court heard arguments on the motion and denied it. The trial court then sentenced Law to serve five years in prison, with four years suspended.

## II. ANALYSIS

On appeal, Law contends that the trial court erred in denying his motions to strike and his motion to set aside the conviction. Specifically, Law argues the trial court erred in finding the evidence sufficient, as a matter of law, to convict

-

him of bribery of a witness pursuant to Code § 18.2-441.1.  We

agree.

We first note that challenges to the sufficiency of the

evidence require the appellate court to "view the evidence in

the light most favorable to the Commonwealth, granting to it all

reasonable inferences fairly deducible from the evidence."

Cooper v. Commonwealth, 31 Va. App. 643, 646, 525 S.E.2d 72, 73

(2000) (en banc); Derr v. Commonwealth, 242 Va. 413, 424, 410

S.E.2d 662, 668 (1991).  The court must "discard the evidence of

the accused in conflict with that of the Commonwealth, and

regard as true all the credible evidence favorable to the

Commonwealth and all fair inferences that may be drawn

therefrom."  Watkins v. Commonwealth, 26 Va. App. 335, 348, 494

S.E.2d 859, 866 (1998); Derr, 242 Va. at 424, 410 S.E.2d at 668.

The reviewing court must accept the findings of the trial court

unless the findings lack evidentiary support or are plainly

wrong.  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487

S.E.2d 259, 261 (1997) (en banc).

Code § 18.2-441.1 provides as follows:

> If any person give, offer, or promise to
> give any money or other thing of value to
> anyone with intent to prevent such person
> from testifying as a witness in any civil or
> criminal proceeding or with intent to cause
> that person to testify falsely, he shall be
> guilty of a Class 6 felony.

The issue in this appeal is one of first impression in Virginia.

Indeed, no appellate court in Virginia has previously considered a

-

conviction under this statute.  Thus, we must initially determine the reach of the statute, before we consider whether the trial court correctly held that Law's conduct fell within that reach.

It is well settled that "[w]hen the language of a statute is plain and unambiguous, we are bound by the plain meaning of that language.  We must determine the intent of the General Assembly from the words contained in the statute, unless a literal construction of the statute would yield an absurd result."  Shelor Motor Co. v. Miller, 261 Va. 473, 479, 544 S.E.2d 345, 348 (2001) (citations omitted).  Indeed, when determining the boundaries of such a statute, "[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction . . . ."  Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992).

Furthermore, the rules of statutory construction require that courts strictly construe criminal statutes against the Commonwealth and "in favor of an accused's liberty."  Waldrop v. Commonwealth, 255 Va. 210, 214-15, 495 S.E.2d 822, 825 (1998) (citing Harward v. Commonwealth, 229 Va. 363, 365, 330 S.E.2d 89, 90 (1985)).  Criminal statutes should support a criminal prosecution "only in those cases clearly falling within the language of the statute," Branch, 14 Va. App. at 839, 419 S.E.2d at 424, and before punishing an individual for violating a criminal statute, "his case must be plainly and unmistakably

-

within the statute."  United States v. Lacher, 134 U.S. 624, 628 (1890).

So viewed, the plain language of Code § 18.2-441.1 prohibits only two specific forms of conduct.  The statute prohibits an individual from: 1) offering money or another object of value to a person with the intent to prevent that person from "testifying as a witness" in a matter; and 2) offering money or another object of value to a person with the intent to influence that person to testify falsely.

Thus, to establish a violation, the plain language of the statute does not require that the offeree be an actual witness, as suggested by the appellant, Law.  It mandates only that the offeror intend to prevent the offeree from testifying as a witness; or if the offeree does testify, that the offeror intend to persuade the offeree to testify falsely.  Accordingly, Riddick's status as an actual witness is of no relevance under the statute.  Instead, the analysis turns upon Law's subjective intent at the time he made the offer to Riddick.

Viewing the evidence in the light most favorable to the Commonwealth, the evidence bearing on Law's intent established that Law approached Riddick outside of the courtroom, just before the preliminary hearing, that he asked her about her relationship to Sykes, that he asked her about the status of the case, and that he offered her $500 to "squash it, to keep the white man out of it."  The Commonwealth argues that Law's statement meant "dismiss"

-

the case.[1]  The Commonwealth further contends that Law's words, in conjunction with these circumstances, established his intent to persuade Riddick not to testify, or to testify falsely.

However, there is no evidence in this record that the term "squash" has special meaning or constitutes "street language" equating to a request to refuse to testify or to do so falsely. While we have held that "[s]lang expressions . . . are well known and matters of common knowledge," such expressions cannot be interpreted beyond their obvious meaning, without evidence justifying such an interpretation.  See Branche v. Commonwealth, 25 Va. App. 480, 491, 489 S.E.2d 692, 697 (1997).  To do so would require speculation as to the speaker's subjective intent.  See Littlejohn v. Commonwealth, 24 Va. App. 401, 415, 482 S.E.2d 853, 860 (1997) ("Convictions cannot rest upon speculation and conjecture.").  Thus, even accepting the Commonwealth's argument that Law's slang expression constituted a request to dismiss the charge, neither the statement, nor the surrounding circumstances, demonstrated anything more than that he offered Riddick money in an attempt to persuade her to dismiss the case.

Further, as the Commonwealth concedes on appeal, Law did not specifically ask Riddick to refuse to testify, nor did he ask her to testify falsely.  No evidence suggested Law contemplated that

_____

[1] Likewise, the Commonwealth argued before the trial court that Law's phrase, "squash the case," was "jargon [or] slang," meaning "drop [the charge].  It means do not prosecute."

-

Riddick would have to refuse to testify, or testify falsely, in order to "squash [the case]." Indeed, assuming without deciding that "squash it" meant "dismiss" as the Commonwealth argues, no evidence established that Law had any special knowledge of the stage of the proceedings and/or the legal issues involved, nor did his conduct in conjunction with the surrounding circumstances suggest that he intended for Riddick to "squash it" by any particular means.

As the Commonwealth conceded during oral argument, had Law's words to Riddick been, "I'll give you $500 to ask the prosecutor to dismiss the case," no violation of the statute would have occurred. However, because Law used a slang or colloquial expression to convey his intent, the Commonwealth contends one can assume this was not his intent and that instead, his intent was to prevent Riddick from testifying or to persuade her to testify falsely. Yet, as stated above, absent speculation, no evidence in this record justifies such an assumption.

Therefore, however inappropriate Law's conduct might have been, the evidence here failed to establish, as a matter of law, that his conduct violated the plain language of Code § 18.2-441.1. For this reason, we find that the trial court's judgment in this matter was plainly wrong, and we reverse the decision of the trial court and dismiss the indictment.

<u>Reversed and dismissed.</u>

-