COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Alston and Senior Judge Annunziata
Argued at Richmond, Virginia


JOSEPH MICHAEL RODRIGUEZ, JR.

                                     MEMORANDUM OPINION[*] BY
v.      Record No. 1239-11-2         JUDGE ROSSIE D. ALSTON, JR.
                                          JULY 10, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

James A. Bullard, Jr. (James A. Bullard, Jr., P.C., on brief), for
appellant.

Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Joseph Michael Rodriguez, Jr. (defendant) appeals his conviction for solicitation to

commit a felony, in violation of Code § 18.2-29. On appeal, defendant argues that the trial court

erred in finding the evidence sufficient to prove that defendant's conduct rose to the level of

solicitation to commit a crime, "due to the vague references contained in a letter defendant may

or may not have written." Finding no error, we affirm.

I. Background[1]

When we review a trial court's denial of a motion to strike, "'we consider the evidence

and all reasonable inferences flowing from that evidence in the light most favorable to the

Commonwealth, the prevailing party at trial.'" Baker v. Commonwealth, 59 Va. App. 146, 148,

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

717 S.E.2d 442, 443 (2011) (quoting Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*)).

So viewed, the evidence indicated that at some point in December 2009, a man was killed in Richmond at a recording studio. In July 2010, defendant was tried for murder and attempted robbery in relation to the December 2009 killing, and two witnesses implicated defendant and two other men. The two other men who were involved in the homicide were never identified, arrested, or convicted of the offenses. The two witnesses who implicated defendant also testified that they knew defendant by his nickname, "Simba." Defendant was convicted of murder.

Shortly after defendant's trial, Detective Goldman interviewed Don Edmunds, an inmate at the jail where defendant was being held. Edmunds was incarcerated at the jail at the same time as defendant. Defendant was known at the jail as "Simba." Edmunds knew that defendant was serving a twenty-five-year sentence for murder. During his interview with Detective Goldman, Edmunds gave the detective a letter that defendant had given him. Edmunds had seen defendant writing the letter, and defendant told him that it concerned his murder conviction and that he was advising his "homeboys" that his case was on appeal and that if his appeal was granted, "he needed these other two boys to take care of the witnesses." He told Detective Goldman that defendant asked him to put the letter in the jail mailbox in an envelope with Edmunds' name on it to avoid officials connecting the letter to defendant.

The letter was addressed to "Uba." It read as follows:

> I know I got you thinking from my phone call an shit cuz I aint explain why I need dem 2 niggaz info. . . . Dis some shit I feel should been taken care of . . . cuz niggaz signed a contract with me . . . an they pose 2 at least show a nigga som love on a lawyer or my books for dat matter. What really shouldve been handle was dem 2 informants dat sent a nigga. . . . But look doe, I heard my lawyer pose 2 be putting an appeal in for me an shit. . . . But you know if that jank go thru I can beat dat money wit ease. I mean as long as there ain't no <u>witnesses</u>! Dats what I need dem 2 niggaz 2

get on top of cuz Im takin dis bid all by myself they can at least help get me thru or out dis bitch. . . . I need they address for insurance purposes doe cuz if dem niggaz don't tighten up they gotta go, an I aint talkin 2 jail ya feel me. . . . So I need dat info ASAP so I can put dis shit 2gether. . . . Love you nigga. Simba

(All [sic] in original). Later, Edmunds' attorney gave Detective Goldman a piece of paper that Edmunds said he tore from the envelope containing the letter. The paper showed an address for "Uba" in Richmond, Virginia.

Defendant was indicted on charges alleging a violation of Code §§ 18.2-29 and -31(2), solicitation to commit murder. At trial, the letter was admitted into evidence, and the Commonwealth presented the testimony of Edmunds, describing how he came into possession of the letter. During his testimony, Edmunds admitted that he was a seven-time convicted felon. On cross-examination, Edmunds also admitted that he was not defendant's cellmate and that he did not "h[a]ng out with [defendant] on the street." He also did not know defendant before he was incarcerated, although defendant did know Edmunds' nephew.

Defendant moved to strike at the conclusion of the Commonwealth's evidence, arguing that the evidence was insufficient to convict him of the offense. The trial court granted in part and denied in part the motion to strike. The trial court found that the evidence did not support the charge of solicitation to commit murder. However, the trial court also found that the Commonwealth had provided sufficient evidence to support the charge of solicitation of a person to commit the felony of accessory before the fact to murder. The trial court explained in its ruling that the Commonwealth had provided sufficient evidence to establish that defendant wrote the letter and that the letter proposed a plan to kill the witnesses who testified against defendant at his murder trial. The trial court also found that the evidence showed that defendant was requesting information from Uba so defendant could carry out his plan. Thus, the trial court

found that the evidence was sufficient to establish that defendant was soliciting Uba to act as an accessory before the fact to murder.

After the trial court ruled on the motion to strike, defendant did not present any evidence and renewed his motion to strike. The trial court denied the motion. Crediting Edmunds' testimony, the trial court stated that it believed defendant wrote the letter and that the letter "set forth the desire, the beginnings of a plan to kill the two witnesses." The trial court found defendant guilty of solicitation to commit a felony as an accessory before the fact, a Class 6 felony, and sentenced him to five years' incarceration.[2] This appeal followed.

## II. Analysis

Code § 18.2-29 prohibits the crime of solicitation. It provides, in pertinent part, "Any person who commands, entreats, or otherwise attempts to persuade another person to commit a felony other than murder, shall be guilty of a Class 6 felony." "Criminal solicitation involves the attempt of the accused to incite another to commit a criminal offense. 'It is immaterial whether the solicitation is of any effect and whether the crime solicited is in fact committed . . . . The gist of [the] offense is incitement.'" Branche v. Commonwealth, 25 Va. App. 480, 490, 489 S.E.2d 692, 697 (1997) (quoting Huffman v. Commonwealth, 222 Va. 823, 827, 284 S.E.2d 837, 840 (1981)).

The trial court in the instant case found that defendant solicited Uba to act as an accessory before the fact. "We have previously defined an accessory as 'one not present at the

---

[2] We recognize that Code § 18.2-18 provides that an accessory before the fact "may be indicted, tried, convicted and punished in all respects as if a principal in the first degree," and thus one who solicits another to act as an accessory before the fact to commit murder may properly be convicted of solicitation to commit murder. See Santora v. Commonwealth, No. 2962-98-4, 2000 Va. App. LEXIS 127 (Va. Ct. App. Feb. 22, 2000). During trial, defendant did not raise the issue of whether solicitation to commit the felony of accessory before the fact to murder is itself a separate crime from solicitation to commit murder, nor does he raise this issue in his assignments of error on appeal. Therefore, we do not address it. See Rules 5A:18, 5A:20(c).

commission of the offense, but who is in some way concerned therein, either before or after, as [a] contriver, instigator or advisor, or as a receiver or protector of the perpetrator.'" McGhee v. Commonwealth, 221 Va. 422, 425, 270 S.E.2d 729, 731 (1980) (quoting Tolley v. Commonwealth, 216 Va. 341, 348, 218 S.E.2d 550, 555 (1975)). "'To be guilty of accessory before the fact, the accused must either know or have reason to know of the principal's criminal intention and must intend to encourage, incite, or aid the principal's commission of the crime.'" Charlton v. Commonwealth, 32 Va. App. 47, 50, 526 S.E.2d 289, 290 (2000) (quoting McGhee, 221 Va. at 427, 270 S.E.2d at 732).

On appeal, defendant makes two arguments in support of his claim that the evidence was insufficient to support his conviction. First, defendant argues that the evidence was insufficient to prove that defendant actually wrote the letter. Second, defendant argues that, even if defendant wrote the letter, its contents do not rise to the level of solicitation.

We hold that the evidence was sufficient to prove that defendant wrote the letter. "On review, we will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224 (2007) (citing Mercer v. Commonwealth, 259 Va. 235, 243, 523 S.E.2d 213, 217 (2000)). Edmunds' testimony supports the trial court's finding that defendant wrote the letter. Edmunds testified that he saw defendant writing the letter and received the letter from defendant to mail on his behalf. Although defendant argues that Edmunds was not credible, the trial court specifically credited Edmunds' testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citing Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985); Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982)). Thus,

Edmunds' testimony was sufficient to support the trial court's finding that defendant wrote the letter.

We also hold that the evidence was sufficient to support the trial court's determination that the letter constituted the solicitation of a person to commit the felony of accessory before the fact to murder. Defendant argues that the letter was too vague and written in such slang that it was impossible to conclude that defendant intended a criminal act. Defendant also argues that the letter expressed mere bravado, rather than a serious intention to commit a criminal act. To the contrary, we find that the evidence was sufficient to support the trial court's finding that the letter set forth the beginning of defendant's plan to have his accomplices kill two witnesses or, failing that, to arrange the killing of the accomplices themselves. In addition, the evidence supports the trial court's finding that the letter expressed defendant's attempt to solicit information from Uba to further this plan.

Although the letter is written in slang, the slang expressions used by defendant "are well known and matters of common knowledge," and the trial court "could reasonably have inferred from the circumstances" that defendant was discussing his plan to murder the witnesses or his accomplices. Branche, 25 Va. App. at 490-91, 489 S.E.2d at 697 (holding that the evidence was sufficient to sustain the defendant's conviction for soliciting an undercover police officer to commit oral sodomy, when the defendant made his request using slang). Defendant's letter stated that he believed he could "beat" the charges against him upon retrial "as long as there ain't no [sic] witnesses!" Defendant says that the two "informants" against him should have been "handle[d]" and that he needed the information "ASAP" so he could "put dis [sic] shit 2gether [sic]." Defendant's letter also stated that he needed the addresses he was requesting for "insurance purposes" because if his accomplices "don't tighten up they gotta [sic] go, an [sic] I aint talkin 2 [sic] jail."

Based on the content of the letter, the trial court could have concluded beyond a reasonable doubt that defendant, a convicted murderer, planned to ask his accomplices to kill the witnesses against him, or, if the accomplices failed to comply with this request, to kill the accomplices themselves. Edmunds' testimony that defendant told him he was writing his "homeboys" to tell them that "if he get[s] the appeal that he needed [them] to take care of the witnesses" supports this interpretation. Moreover, viewing the evidence in the light most favorable to the Commonwealth, as we must on appeal, the context of the letter suggests that defendant's criminal plans were sincere and not mere bravado. Defendant's argument essentially invites this Court to engage in an exercise of post-trial evidentiary interpretation. We respectfully decline this invitation.

By requesting the addresses of his accomplices from Uba, defendant was soliciting Uba to aid him in the criminal acts proposed in the letter. Therefore, the trial court did not err in finding that defendant solicited Uba to act an accessory before the fact. As a result, the evidence was sufficient to support defendant's conviction for solicitation under Code § 18.2-29.

Affirmed.