## Richmond

KATHRYN COAKE HUFFMAN

v.

COMMONWEALTH OF VIRGINIA

December 4, 1981.

Record No. 810052.

Present: All the Justices.

*S. Strother Smith, III*, for appellant.

*Robert E. Bradenham, II, Assistant Attorney General (Marshall Coleman, Attorney General*, on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

In a bench trial the court convicted Kathryn Coake Huffman of criminal solicitation in violation of Code § 18.2-29. In this appeal she argues that the evidence is insufficient to convict because the intended victim was not specifically named or otherwise sufficiently identified. She further argues that the defense of entrapment should bar the prosecution. We reject both contentions and affirm the judgment.

Huffman, a 42-year-old married clerical worker, had been involved for more than three years prior to the trial in a romantic liaison with Robert Perkins, a married man. They had discussed divorcing their respective spouses and making their relationship permanent. Several witnesses described Huffman as a depressed woman caught in a lovers' triangle.

The evidence at trial reveals that on November 30, 1979, Thomas Burton, a Salem restaurant night manager, received a telephone call at work. The caller, later identified as Huffman, introduced herself as Jenny Jennings and told him she needed to have "somebody done away with" and that Burton had been recommended as a "hit man." During this and a second telephone conversation, Burton arranged a meeting with Huffman later that night at a different restaurant. Burton then contacted the police and told them a woman wanted to hire a killer. Thereafter, he acted on their instructions.

Burton testified that he met and talked with Huffman in a restaurant booth. The police taped the conversation. Huffman described the victim as a married, 50-year-old woman with school-aged children. She suggested that the killer hide among the trees near the victim's house until the victim was alone, then kill her, making the crime look like a robbery or rape. Burton declined the offer, but offered to contact a friend who allegedly did that kind of work.

On December 1, 1979, at 12:12 p.m., Huffman called Burton. The police recorded this conversation also. Burton told her that he had contacted his friend and the friend agreed to do "the job" for $1,000 cash, but demanded $500 in advance. Huffman, unsure about the advance, decided to meet this "friend." She offered to locate a pay phone where the friend could wait for her call to arrange a meeting. She further informed Burton that the killer must complete the job before December 15, when the work shift of the victim's husband changed and he would be at home in the day time. Huffman suggested an alternate plan of spraying the victim with mace paralyzing gas in a parking lot.

Huffman called back to give Burton the number and location of the pay phone she had selected. The police tape revealed that they arranged for her to call Burton's friend there at a particular time. This call was not completed, but a second planned call occurred on December 3, 1979, between Investigator Michael R. Bass, posing as Burton's friend, and Huffman. They scheduled a meeting the same day in a motel parking lot.

The police tapes showed, and Bass testified, that Huffman described the victim as a housewife and outlined murder scenarios. She refused to pay the demanded $500 advance, and they parted. Huffman called Bass at the pay phone that evening. Bass asked

for a one-third advance; she refused, saying "I think we might as well forget it."

On December 4, 1979, the police searched Huffman's house and found an aerosol can of mace, a piece of paper bearing the words "Jenny Jennings," another paper bearing the number of the pay telephone and exactly $1,000 in cash.

I.  *Sufficiency of the Evidence.*

█ Code § 18.2-29* is a product of the 1975 revision of the general laws of Virginia relating to crimes and offenses generally.

This court recognized solicitation as a common law offense more than a century ago. In *Womack* v. *Circle,* 70 Va. (29 Gratt.) 192, 198 (1877), a civil case, we said: "To solicit another to commit a felony, although the felony be not afterwards committed, is a misdemeanor at common law, indictable and punishable." (Citations omitted). This court addressed the subject again in *Wiseman* v. *Commonwealth,* 143 Va. 631, 637-38, 130 S.E. 249, 251 (1925), stating:

> [S]ome discussion has arisen as to whether solication is an attempt, but it seems well established that to invite or solicit one to commit crime, where no attempt is actually made to commit it, at least in some cases, is indictable at common law as solicitation. Solicitation, or inciting to crime, does not proceed to the point of some overt act in the commission of crime. When it proceeds to this point it becomes an attempt to commit crime and is indictable as such.

In *Wiseman,* we sustained a conviction under the common law offense for soliciting and requesting another to influence a grand juror. Recently, in *Pederson* v. *Richmond,* 219 Va. 1061, 1067, 254 S.E.2d 95, 99 (1979), we affirmed a solicitation conviction under a city ordinance, stating:

> Solicitation may comprise a course of conduct, intended to induce another to act, that continues over an extended pe-

---

* Code § 18.2-29. *Criminal solicitation; penalty.* — Any person who commands, entreats, or otherwise attempts to persuade another person to commit a felony, shall be guilty of a Class 6 felony.
Acts 1975, pp. 21 and 105, effective October 1, 1975.

riod. All the evidence bearing upon . . . intent is relevant to a determination of . . . guilt or innocence.

. . . .

. . . It is true . . . that no overt attempt . . . occurred; the relationship . . . never got beyond the discussion stage. But the separate crime of solicitation may be completed before an attempt is made to commit the solicited crime.

The case of *Cherry* v. *State,* 18 Md. App. 252, 306 A.2d 634 (1973) is cited in *Pederson.* In *Cherry,* the Maryland court contributes this background discussion on solicitation:

The inchoate crimes generally are of recent vintage in the history of the common law. The latest and the least of these is solicitation. Its first formulation, as something distinct from a mere aspect in the law of attempts, was in *Rex* v. *Higgins* in 1801, 2 East 5, 102 Eng. Rep. 269 . . . . Solicitation is now universally recognized in the United States as a part of Anglo-American common law. In Clark and Marshall, Law of Crimes (7th ed. 1967), its characteristics are well set out, at 219-223:

"Solicitation is a distinct common-law misdemeanor in which the act forbidden consists of the accused person's parol or written efforts to activate another to commit a criminal offense. It is immaterial whether the solicitation is of any effect and whether the crime solicited is in fact committed . . . .

"The gist of this offense is incitement. In brief, the gravamen of this common-law misdemeanor lay in counselling, enticing, or inducing another to commit a crime . . . .

"Inciting or soliciting another to commit a crime is the act of the least magnitude which is punishable by the common law. In such offenses the actor does nothing himself but he urges others to violate the law. The necessity for punishing such persons is obvious, and such conduct is generally punished as a substantive crime, notwithstanding the solicitation does not move the party solicited to commit the offense."

18 Md. Ap. at 257-58, 306 A.2d at 637-38. *See also* W. LaFave and A. Scott, Jr., *Criminal Law* § 58 (1972); Note, *Reforming*

*the Law of Inchoate Crimes,* 59 Va. L. Rev. 1235, 1260 *et seq.* (1973); and Wechsler, Jones and Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy,* 60 Colum. L. Rev. 957 (1961).

■ Considering the relationship of the parties, the trial judge could have believed beyond reasonable doubt from the evidence, direct and circumstantial, that Huffman, a depressed and distraught female, had become enamored of Perkins, was determined to marry him and make their relationship permanent, and concluded that the only way to accomplish her objective was to arrange for the murder of Mrs. Perkins. The fact that she did not call her name or specify her exact identity is no defense. The statute is designed as a deterrent to a person who, by any means, "attempts to persuade" another to commit a felony. Here, the offense was committed on the first night and at the completion of the conferences between Burton and Huffman. Nothing further was required.

## II. *Entrapment.*

■ Huffman argues that, although Tom Burton was not an agent of the Commonwealth, by contacting Bass on Huffman's behalf, he provided her with the means by which she could commit the alleged offense; and that, hence, the solicitation was the product of police entrapment.

This argument wholly ignores our holding in *Cogdill* v. *Commonwealth,* 219 Va. 272, 247 S.E.2d 392 (1978). There, we sustained a conviction for procuring for the purposes of prostitution in violation of Code § 18.2-348, saying:

> We have repeatedly held that, when the criminal design originates in the mind of the accused and, thereafter, the Commonwealth does no more than afford an opportunity for the commission of the crime, the defense of entrapment does not lie. Whether the criminal design originated with the accused or was first conceived by the police may, in some cases, be a question of fact for the jury. No such question exists in this case.

219 Va. at 279, 247 S.E.2d at 396.

Factually, the conduct of Huffman bears a close parallel to that of Cogdill. The intended crime originated in the evil mind of each defendant. Police were brought in merely as a means of permitting the original defendant an opportunity to carry out her criminal plan. We repeat this relevant comment from *Cogdill,* quoting *Neighbors* v. *Commonwealth,* 214 Va. 18, 19, 197 S.E.2d 207, 208-09 (1973): "[I]t is clear that all the police . . . did was to afford an opportunity for the commission of the offense, an opportunity the defendant willingly accepted." 219 Va. at 279, 247 S.E.2d at 396. We hold that the defense of entrapment is unavailable here.

Finding no error in the court below, we affirm the judgment of the trial court.

*Affirmed.*