HUMPHREYS, J.,
concurring.
Because I would reach the same result as the majority, but for different reasons, I write separately.
As the majority states, the Double Jeopardy Clauses of the United States and Virginia Constitutions protect “against a second prosecution for the same offense after either an acquittal or a conviction of that offense and against multiple punishments for the same offense.” Coleman v. Commonwealth, 261 Va. 196, 199, 539 S.E.2d 732, 733 (2001). For double jeopardy purposes, one offense is the same as another if it involves “the identical act and crime both in law and fact[.]” Henson v. Commonwealth, 165 Va. 829, 832, 183 S.E. 438, 439 (1936) (citation omitted). However, “if the same act or transaction was not involved in the two offenses, [the Double Jeopardy Clause] does not bar the subsequent prosecution.” Peake v. Commonwealth, 46 Va.App. 35, 40, 614 S.E.2d 672, 676 (2005). A defendant bears the burden of establishing the identity of the offenses material to his double jeopardy plea. Cooper v. Commonwealth, 13 Va.App. 642, 644, 414 S.E.2d 435, 436 (1992).
Separate crimes that happen to occur on or about the same day do not necessarily offend the Double Jeopardy Clause. As the majority notes, the issue is whether or not a course of criminal conduct, in the abstract, constitutes a single criminal offense or multiple criminal offenses. Ostrander argues, and the majority assumes for the purposes of its analysis, that because the indictments allege that both the criminal solicitation and the attempted capital murder occurred on the same date, they must necessarily have occurred simultaneously. Yet it is Ostrander’s burden as the appellant to provide us with a record that supports his factual assertion that such was the case. Jenkins v. Winchester Dep’t of Soc. Servs., 12 *399 Va.App. 1178, 1185, 409 S.E.2d 16, 20 (1991) (“The burden is upon the appellant to provide us with a record which substantiates the claim of error.”). See also Cooper, 13 Va.App. at 644, 414 S.E.2d at 436 (“Customarily, a defendant carries [his] burden [of establishing the identity of the offenses material to his double jeopardy plea] by ‘production of the record or transcript of the initial trial.’ ” (quoting Low v. Commonwealth, 11 Va.App. 48, 50, 396 S.E.2d 383, 384 (1990))).
On the record before us, neither the Commonwealth’s proffer of evidence in support of Ostrander’s guilty plea to criminal solicitation, nor the evidence presented to the jury in support of the offense of attempted capital murder suggests that this was necessarily the case. Indeed, had Ostrander not entered his guilty plea to one of the charges, the record contains evidence from which the jury could have found Ostrander guilty of both attempted capital murder for hire and solicitation to commit capital murder based on conduct that occurred on two or more separate occasions. Because the evidence supports convictions based on multiple discrete incidents that occurred “on or about” the date alleged in the indictments, in my view the two convictions are not for the “same offense,” and I would affirm the convictions without the need to conduct a double jeopardy analysis.
Viewed in the light most favorable to the Commonwealth, Martin v. Commonwealth, 4 Va.App. 438, 443, 358 S.E.2d 415, 418 (1987), the evidence proved that in July 2005, Ostrander contacted Patrick Fleming (“Fleming”), an acquaintance of his, and told him he “had some work for [him].” Ostrander asked Fleming to travel from his home in Ohio to Virginia to meet with him. When Fleming met with Ostrander, Ostrander described his ex-wife’s boyfriend as a “piece of fucking shit” who “deserve[d] to die.” Ostrander wanted Fleming to kill his ex-wife’s boyfriend, and “beat up” his ex-wife’s attorney. Ostrander showed Fleming the boyfriend’s business and residence, and started “breaking down a plan” for Fleming to kill the boyfriend. Fleming “was kind of taken back by the whole thing,” and said he never intended to carry out the murder plan but acted as though he would because he was “at *400 [Ostrander’s] mercy for ... transportation to get back [to Ohio].” He led Ostrander to believe he “had to recruit somebody” to do the job. Ostrander gave Fleming a small amount of money for travel expenses, and Fleming drove home to Ohio.
After returning to Ohio, Fleming accepted an additional $1,000 from Ostrander for transportation costs, and then stopped answering Ostrander’s telephone calls. At this point, Fleming was “just hoping [the matter] would go away.”
By mid-August of 2005, however, Ostrander started calling Fleming with more frequency. As a result, Fleming contacted Theodore Kroczak (“Kroczak”), a police detective in Ohio whom he knew, and informed him of Ostrander’s proposal. The detective, in turn, contacted a Bureau of Alcohol, Tobacco, and Firearms (“ATF”) agent and a police detective in Chesapeake, and informed them of the plot. The group developed a plan in which Fleming would arrange a meeting with Ostrander, and Kroczak would pose as a “hit man,” using the alias “Dominic Kavelli.”
In furtherance of this plan, Fleming telephoned Ostrander on August 16, August 19, and August 23, 2005, and recorded the conversations. When the two spoke on August 16, they spoke of “pictures of [Ostrander’] kids.” Fleming said this was a phrase the two of them had coined to refer to the intended killing. During the August 19 conversation, the two discussed repossession of a vehicle. Fleming testified that the “repo job” was another coded reference to the intended killing. Ostrander also told Fleming that the victim would have “some good stuff for [Fleming’s] pocket,” meaning that the victim would likely be carrying cash and other valuables for Fleming to take. During the August 23 conversation, the two discussed “setting up a business,” which again was code for the intended killing. Ostrander assured Fleming he had “no iota of a doubt” about the plan. Fleming told Ostrander he would bring his friend, “Dominic,” a.k.a. Kroczak, to Virginia as well.
Fleming and the two law enforcement officers traveled to Virginia on August 28, 2005, rented a car, and put Ohio license *401 plates on it, so it would appear they had driven to Virginia. Fleming and Kroczak met Ostrander in a bar, and Ostrander drove them around to Ostrander’s ex-wife’s boyfriend’s home and business in order to plan “the hit.” Ostrander gave descriptions of the intended victim’s vehicles and license plate numbers.
The plan involved Kroczak shooting the victim as he exited his car in the parking lot of his business, and Kroczak scaling a fence, to meet Fleming in a nearby getaway car. Ostrander planned to be with his girlfriend at the time of the shooting, to establish an alibi. The three men agreed on a price of $5,000 for the killing. Ostrander stopped at an automatic teller machine, withdrew $800, and gave it to Fleming. Ostrander stated that he would “make arrangements” to give Fleming the rest of the money “within a few weeks.”
The next day, Fleming called Ostrander to inform him that they had been unable to carry out the plan, because the parking lot in which the shooting was to take place was too crowded. The three men met at a restaurant in Virginia Beach, and Fleming and Kroczak asked Ostrander where else the intended victim might be located. Ostrander gave Fleming an additional $100 towards the fee. Local police arrested Ostrander later that day.
As the majority notes, in ruling on Ostrander’s double jeopardy motion, the trial court responded to the prosecutor’s argument that the evidence demonstrated that Ostrander committed two distinct offenses, by asserting, “that might well be true but the indictments allege that both offenses occurred on August 28th.” However, although the indictment alleges that Ostrander committed these offenses on August 28, 2005, for the purposes of a “same offense” double jeopardy analysis, neither the trial court nor we are limited to the date alleged on the indictment any more than the fact finder was in determining if the facts alleged in the indictment were proved. See Code § 19.2-226(6) (stating that an indictment shall not be deemed invalid “[f]or omitting to state, or stating imperfectly, the time at which the offense was committed when time is not *402 the essence of the offense”). Indeed, in cases “where the date of the offense is ‘not of the essence of the offense,’ nor ‘shown to be significant,’ the Commonwealth is not required to charge that it occurred on a specific date.” Raja v. Commonwealth, 40 Va.App. 710, 721, 581 S.E.2d 237, 242 (2003) (quoting Marlowe v. Commonwealth, 2 Va.App. 619, 622, 347 S.E.2d 167, 169 (1986)). In such cases, “the Commonwealth may even prove that the offense occurred on a date ‘other than that alleged in the charging instrument.’ ” Id. (quoting Stapleton v. Commonwealth, 140 Va. 475, 488, 124 S.E. 237, 242 (1924)).
Code § 18.2-29 states, in pertinent part, that “[a]ny person who commands, entreats, or otherwise attempts to persuade another person to commit a murder is guilty of a felony punishable by confinement in a state correctional facility for a term not less than five years or more than forty years.” We have stated that “ ‘invit[ing] or soliciting] one to commit crime, where no attempt is actually made to commit it, ... is indictable at common law as solicitation. Solicitation, or inciting to crime, does not proceed to the point of some overt act in the commission of crime.’ ” Ford v. Commonwealth, 10 Va.App. 224, 226, 391 S.E.2d 603, 604 (1990) (quoting Wiseman v. Commonwealth, 143 Va. 631, 637-38, 130 S.E. 249, 251 (1925)). “Indeed, the act of solicitation may be completed before any attempt is made to commit the solicited crime[.]” Id. “[I]t is ‘immaterial whether the ... crime solicited is in fact committed since the gist of this offense is incitement.’ ” Id. (quoting Huffman v. Commonwealth, 222 Va. 823, 827, 284 S.E.2d 837, 840 (1981)). Indeed, “[t]he conduct constituting the act of solicitation must ... be done with the intent ‘to induce another to act.’” Id. (quoting Pedersen v. City of Richmond, 219 Va. 1061, 1067, 254 S.E.2d 95, 99 (1979)).
In this case, Ostrander spoke with Fleming on the telephone several times during July 2005, and again on August 16, 19, and 23, 2005. During the July conversations, Ostrander repeatedly asked Fleming to kill someone. In the conversations on the three dates in August, Ostrander used coded phrases to refer to the intended killing. Ostrander told Fleming that there would be “some good stuff for [Fleming’s] pocket,” on *403 the intended victim’s body if Fleming proceeded with the killing. He also told Fleming that he had “no iota of a doubt” about the killing proceeding as planned. The Commonwealth proffered evidence to this effect when Ostrander entered his guilty plea for solicitation to commit capital murder. From this evidence, the fact finder could have found that Ostrander spoke to Fleming with the intent to “induce [Fleming] to act.” Therefore, the evidence is sufficient to prove that Ostrander solicited Fleming to commit murder on August 16, 19, and 23, 2005.
Code §§ 18.2-25 and 18.2-31(2) forbid the attempt to hire a person to commit the “willful, deliberate, and premeditated killing of [another] person[.]” “An attempt to commit a crime is composed of two elements: (1) the intent to commit it; and (2) a direct, ineffectual act done toward its commission. The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation.” Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969).
On August 28, 2005, Ostrander drove Fleming and Kroczak to the intended murder victim’s business, formulated a plan with the two men in which Kroczak would shoot the would-be victim in the parking lot of his business, and gave Fleming a partial payment for the killing. As far as Ostrander was concerned, he needed do nothing else for Fleming and Kroczak to commit the murder the next day. This evidence supports Ostrander’s conviction for attempted capital murder for hire on August 28, 2005.
Thus, the record supports the finding that Ostrander made solicitations to commit murder on August 16, 19, and 23, 2005, and an attempted capital murder for hire on August 28, 2005. Ostrander’s indictment alleged that both of the offenses occurred only on August 28, 2005. Therefore, the trial court only considered Ostrander’s conduct on this day, and affirmed Ostrander’s conviction, holding that solicitation to commit capital murder is not a lesser-included offense of attempted capital murder for hire and, thus, not the “same offense” for *404 double jeopardy purposes. However, because the evidence shows that Ostrander committed these crimes on two separate and distinct occasions, I would affirm Ostrander’s convictions without conducting a double jeopardy analysis. See Peake, 46 Va.App. at 40, 614 S.E.2d at 675.
Accordingly, although I find no fault with the detailed double jeopardy analysis of the majority, in my view it is unnecessary to the resolution of the issue before us and therefore I respectfully concur only in the judgment.