UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, AtLee and Senior Judge Bumgardner
Argued at Richmond, Virginia


MARK DAVID MURGIA

                                              MEMORANDUM OPINION* BY
v.        Record No. 0788-16-1                JUDGE RUDOLPH BUMGARDNER, III
                                              MAY 30, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

Charles B. Lustig for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Mark D. Murgia appeals his conviction for computer solicitation of a minor in violation of

Code § 18.2-374.3(D).  He argues the evidence was insufficient to prove he solicited, proposed, or

incited the victim to commit any of the acts proscribed by Code § 18.2-374.3(C).  We agree the

evidence was insufficient and reverse the conviction.

The victim was a sixteen-year-old female high school student.  She ran track, and the

defendant was a specialty coach for her track team.  The victim worked with the defendant on four

or five occasions, and they had exchanged cell phone numbers.  In March of 2015, when preparing

for a track meet, the victim exchanged text messages with the defendant to schedule stretching

sessions.  In one message, the victim asked for help in the high jump event.  The defendant

responded, "Ok, cool...I'm gonna stretch your tight ass legs out and loosen them hips up too."  The

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

defendant also sent messages stating, "Wow.. So u an under cover lover lol mmmm-mmm," and "I'm getting my sip on… Buzzin…Wish we could chill right now….Is that weird lol."

Another message exchange began with the victim texting, "I have to get better and you're the only person I know that can actually focus their time just on me." The defendant responded, "Meow! I like it when u get possessive... U makin me feel some kinda way boo." She responded, "It's true lol coach stan has like 30 other girls to focus on plus the boys too." He wrote back, "I know u right I'm just messin with you...I like working with yo sexy self. Sorry if I'm blunt just keeping it real."

At one point, the defendant told the victim he had had a "crazy" dream about her. When she asked about the dream, he texted back:

> Lol ok u asked for it… Don't know where we were but we were watching TV like u said last night but we were hugged up cuddling like it was normal lol…that quickly escalated to a body message [sic] but we were both naked as the day born (awkward but strangely comfortable) …u were on your stomach and the message [sic] turned into my lips on the back of your thighs and butt… I spread your legs from behind and started slowly sucking on your kitty lips and working your clit in my mouth…u turned over and I kissed up your stomach to your breasts and gently sucked your nipples while I worked my incredibly hard dick up your thigh…I put the head against your kitty lips and slowly pushed inside you little by little until I was deep inside you…slowly long stroked that kitty, I could feel you wrapped tight around me taking me deep inside you…I was kissing your neck and you flipped me over bent over to kiss me and started slow dragging that pussy up and down my shaft like it was yours until I felt your warm cum run down my dick and I let go inside of you filling you with hot me…yeah needless to say I woke up like wtf??

The defendant also texted, "[d]ream came out of nowhere, sorry if that hurt your eyes while readin," and "Crickets…..U prob like coach is a freak! Lmao ….umm yeah that dg."

The victim testified she "didn't think anything of" the defendant's text message about his dream, but after she sent the message to a friend, the police became involved. On cross-examination, the victim testified that when the defendant worked with her as a coach, they

always met in public places, and other people were always present. She testified the defendant never touched her or said anything inappropriate to her. He never asked her to meet him alone, even after sending the message about the dream.

When interviewed by Officer Perry M. Bossuot, the defendant denied having contact by phone or text message with any of the students he coached. He specifically denied having contact with any students at the victim's school, stating that such contact would be inappropriate. The officer asked about possible "racy" text messages the defendant may have sent. The defendant stated it was "possible" he sent such messages "mainly because he was a physical therapy person."

In finding appellant guilty, the trial court stated it considered the conduct of the accused, "whatever intent flows naturally from that conduct," and the context in which the communications took place. It noted that the victim was a sixteen-year-old high school student, and the defendant was her track coach. The trial court based its finding of guilt on the extremely graphic nature of the messages and the relationship of the victim and the defendant.

"On appeal, we will consider the evidence in the light most favorable to the Commonwealth, as it prevailed in the trial court." Whitehurst v. Commonwealth, 63 Va. App. 132, 133, 754 S.E.2d 910, 910 (2014). Code § 18.2-374.3(D) provides:

> Any person who uses a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means, for the purposes of soliciting, with lascivious intent, any child he knows or has reason to believe is at least 15 years of age but younger than 18 years of age to knowingly and intentionally commit any of the activities listed in subsection C if the person is at least seven years older than the child is guilty of a Class 5 felony.

The activities listed in Code § 18.2-374.3(C) are:

> 1. Expose his sexual or genital parts to any child to whom he is not legally married or propose that any such child expose his sexual or genital parts to such person;

2. Propose that any such child feel or fondle his own sexual or genital parts or the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child;

3. Propose to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361; or

4. Entice, allure, persuade, or invite any such child to enter any vehicle, room, house, or other place, for any purposes set forth in the preceding subdivisions.

"[T]he gravamen of [the crime of solicitation lies] in counselling, enticing or inducing another to commit a crime." Huffman v. Commonwealth, 222 Va. 823, 827, 284 S.E.2d 837, 840 (1981) (quoting Cherry v. State, 306 A.2d 634, 637-38 (Md. Ct. Spec. App. 1973)).

"Inciting or soliciting another to commit a crime is the act of the least magnitude which is punishable by the common law. In such offenses the actor does nothing himself but he urges others to violate the law. The necessity for punishing such persons is obvious, and such conduct is generally punished as a substantive crime, notwithstanding the solicitation does not move the party solicited to commit the offense."

Id. (quoting Cherry, 306 A.2d at 638).

The offense is complete at the time of the actual solicitation; there is no requirement that the accused "proceed to the point of some overt act in the commission of crime." Wiseman v. Commonwealth, 143 Va. 631, 638, 130 S.E. 249, 251 (1925). "The act of solicitation may be completed before any attempt is made to commit the solicited crime." Brooker v. Commonwealth, 41 Va. App. 609, 614, 587 S.E.2d 732, 734 (2003) (quoting Ford v. Commonwealth, 10 Va. App. 224, 226, 391 S.E.2d 603, 604 (1990)).

The specific intent to commit [a crime] may be inferred from the conduct of the accused if such intent flows naturally from the conduct proven. Where the conduct of the accused under the circumstances involved points with reasonable certainty to a specific intent to commit [the crime], the intent element is established.

- 4 -

Id. at 614, 587 S.E.2d at 734-35 (quoting Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 674 (1995)). "[I]ntent is 'a secret operation of the mind.'" Riegert v. Commonwealth, 218 Va. 511, 518-19, 237 S.E.2d 803, 807-08 (1977) (quoting Trogdon v. Commonwealth, 72 Va. (31 Gratt.) 862, 872 (1878)).

While the defendant does not deny that he sent the messages to the victim, he maintains that the evidence was insufficient to prove that he encouraged or incited the victim to commit any of the acts enumerated in the statute. The defendant contends that the holding in Ford controls this case.

Ford was convicted of violating Code § 18.2-29, Criminal solicitation.[1] In Ford, two female students from Randolph-Macon College were waiting in the drive-through lane at a McDonald's restaurant. Ford, 10 Va. App. at 225, 391 S.E.2d at 603-04. Ford, a McDonald's employee, walked to their car, leaned against the driver's side of the car and asked the women if they attended Randolph-Macon. Id. at 225, 391 S.E.2d at 604. The women answered affirmatively and resumed their conversation. Id. Ford mumbled something. Id. One of the women asked Ford what he wanted. Id. Ford replied that he wanted sex, and he stated, "'I want to lick your pussy.'" Id. The women rolled up their car windows and reported Ford's behavior to the manager.

This Court reversed Ford's conviction, finding that Ford's statements "were no more than the expression of his own desire and did not constitute a command, entreaty or attempt to persuade either" woman to engage in oral sodomy. Id. at 228, 391 S.E.2d at 605. The trial court was "plainly wrong in concluding that the Commonwealth had sustained its burden of proving that Ford spoke to [either woman] with the intent 'to induce' either of them to act." Id.

---

[1] At the time of the offense, Code § 18.2-29 provided, in pertinent part: "Any person who commands, entreats, or otherwise attempts to persuade another person to commit a felony, shall be guilty of a Class 6 felony."

In this case, the messages sent to the victim did not show the defendant intended to induce the victim to commit a criminal offense, though one message contained graphic descriptions of sexual conduct with the victim. "The conduct constituting the act of solicitation must . . . be done with the intent 'to induce another to act.'" Id. at 227, 391 S.E.2d at 604 (quoting Pedersen v. City of Richmond, 219 Va. 1061, 1067, 254 S.E.2d 95, 99 (1979)).

In the most explicit message sent to the victim, the defendant described a dream in which he engaged in sexual acts with the victim. However, the message did not entice, persuade or entreat the victim to engage in any of the proscribed conduct. It simply described sexual conduct. "[T]he gravamen of [the crime of solicitation lies] in counselling, enticing or inducing another to commit a crime." Huffman, 222 Va. at 828, 284 S.E.2d at 840 (quoting Cherry, 306 A.2d at 637-38). Although that message contained graphic descriptions of sexual conduct with the victim, it never expressed a desire of the defendant to commit any of the enumerated sexual acts with the victim, much less expressed any desire to entice the victim to commit such acts.

In another message to the victim, the defendant wrote, "I'm gonna stretch your tight ass legs out and loosen them hips up too." The message was sent in response to the victim asking the defendant for assistance with attaining a certain height in the high jump track event. The defendant was the victim's high jump specialty coach. Though crude, the message did not constitute a command or entreaty to persuade the victim to commit a crime.

While there is no requirement to prove that the defendant committed an overt act toward the commission of a sexual offense, see Wiseman, 143 Va. at 637-38, 130 S.E. at 251, such evidence can be considered in analyzing the defendant's intent to induce the victim. "Proof of intent inheres in the words or conduct of the accused." Dove v. Commonwealth, 41 Va. App. 571, 578, 586 S.E.2d 890, 894 (2003). The evidence showed the defendant took no step toward committing any illegal sexual activity with the victim. The victim testified there were always other persons present

- 6 -

when she worked with the defendant, he never acted inappropriately toward her, he never asked her to meet him alone, he never touched her, and he did not contact her again after he sent the dream message.

We cannot say the defendant's communications crossed the line from "words alone" to inducing or enticing the victim. This case is distinguishable from other cases where this Court affirmed convictions for solicitation. Bloom v. Commonwealth, 34 Va. App. 364, 372-73, 542 S.E.2d 18, 22 (2001), held the accused's actions and statements were not "words alone" when the accused communicated to the minor victim that he wanted to perform oral sodomy on her, he arranged to meet her, and he went to an agreed location to meet her. Brooker held the trial court could infer the intent to solicit a minor to commit illegal sex acts via a communications device when, *inter alia*, the accused sent images of his genitals to the victim, inquired if the victim wanted to "see and feel the real thing," asked the victim if she would come to his residence, wrote that he would have sexual intercourse with the victim if she was present, and asked if the victim would lose her virginity to him. Brooker, 41 Va. App. at 614-15, 587 S.E.2d at 735.

In the instant case, no evidence showed the defendant's messages constituted an entreaty or effort to persuade the victim to engage in any illegal sexual conduct. Viewing the evidence in the light most favorable to the Commonwealth, the conviction, "was without evidentiary support." Ford, 10 Va. App. at 228, 391 S.E.2d at 605. The defendant's text messages "did not rise to the level of incitement to criminal activity and therefore, standing alone, are insufficient to sustain a conviction" for a violation of Code § 18.2-374.3(D). Ford, 10 Va. App. at 227, 391 S.E.2d at 604. Accordingly, we reverse and dismiss.

Reversed and dismissed

Beales, J., dissenting.

As the majority opinion aptly states, "The gravamen of [the crime of solicitation lies] in counselling, enticing or inducing another to commit a crime." Huffman v. Commonwealth, 222 Va. 823, 827, 284 S.E.2d 837, 840 (1981) (quoting Cherry v. State, 306 A.2d 634, 637-38 (Md. Ct. Spec. App. 1973)). However, I must respectfully depart from the majority's conclusion that, "in the instant case, *no evidence* showed the defendant's messages constituted an entreaty or effort to persuade the victim to engage in any illegal sexual conduct." (Emphasis added). I would affirm the trial court's determination that appellant's course of conduct constituted an entreaty to the minor female student athlete to engage in a sexual act with him because the trial court was certainly not without evidence to support its finding of guilt.

## I. BACKGROUND

The victim in this matter was a sixteen-year-old female track student at her local high school. Appellant, forty years old at the time of the offense, was a track coach who had agreed to help her with her long jump. Between October 2014 and March 2015, the two exchanged text messages indicative of a normal coach-to-student relationship. However, throughout the month of March, appellant's text messages to the victim became increasingly personal. One night, he even told her that he was "getting my sip on . . . Buzzin," and he said, "[w]ish we could chill right now." He also called her "Boo" as a term of endearment, told her that she made him "feel some kind of way," told her that he would be her "secret," followed by a smiling face emoji[2] with hearts for eyes. Appellant referred to her as "yo sexy self" and told her, "I'm gonna stretch your tight ass legs out and loosen them hips up too." Appellant later admitted (after lying to police and saying that he never texted *any* students because it would be inappropriate) that it was

---

[2] An "emoji" is a small digital image or icon used to express an idea or emotion in electronic communications.

- 8 -

"possible" he sent a "racy" text message to someone.  He attempted to explain to police that he

sent such a text because he was a "physical therapy guy."  The trial court, who was the factfinder

in this bench trial, skeptically observed, "I don't know too many physical therapists who use that

language."  Finally, on March 21, 2015, appellant texted "ing[sic] right b4 I went to sleep, had a

CRAZY dream with u in it…wow."  After which, when the victim asked for details about the

dream, appellant texted her the following:

> Lol ok u asked for it… Don't know where we were but we were
> watching TV like u said last night but we were hugged up cuddling
> like it was normal lol…that quickly escalated to a body message
> [sic] but we were both naked as the day born (awkward but
> strangely comfortable) …u were on your stomach and the message
> [sic] turned into my lips on the back of your thighs and butt…I
> spread your legs from behind and started slowly sucking on your
> kitty lips and working your clit in my mouth…u turned over and I
> kissed up your stomach to your breasts and gently sucked your
> nipples while I worked my incredibly hard dick up your thigh…I
> put the head against your kitty lips and slowly pushed inside you
> little by little until I was deep inside you…slowly long stroked that
> kitty, I could feel you wrapped tight around me taking me deep
> inside you…I was kissing your neck and you flipped me over bent
> over to kiss me and started slow dragging that pussy up and down
> my shaft like it was yours until I felt your warm cum run down my
> dick and I let go inside of you filling you with hot me…yeah
> needless to say I woke up like wtf??

When the victim did not respond to this text, appellant again texted, "[d]ream came out of

nowhere, sorry if that hurt your eyes while readin" and then texted her again, saying,

"Crickets…..U prob like coach is a freak!"

## II.  ANALYSIS

### A.  *Standard of Review*

When considering the sufficiency of the evidence on appeal, "a reviewing court does not

'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable

doubt.'"  Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original).  "Viewing the evidence in

the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)) (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### B. *Appellant's Lascivious Intent is Clearly Established*

The trial court's finding that appellant possessed the requisite lascivious intent is supported overwhelmingly by the evidence on appeal. The majority states, "We cannot say the defendant's communications crossed the line from 'words alone' to inducing or enticing the victim." Thus, the majority concludes that no rational trier of fact could have found that appellant *intended* to solicit the victim.

Appellant was in a position of influence and authority over the victim. In such position, he sent a pornographically detailed account of his sexual desires to the victim as an expression of his feelings for her and his fantasy for the two of them. He sent this text of his daydream about her *to her* after repeatedly making inappropriate remarks about her as his "boo," telling her that he would be her "secret," telling her that she made him "feel some kind of way," and explaining to her how he planned to "stretch [her] tight ass legs out and loosen them hips up too." When confronted, appellant lied to police about even texting her in the first place, and he did all of this knowing that she needed his help and coaching expertise to improve herself in the long jump.

The majority relies on Ford v. Commonwealth, 10 Va. App. 224, 391 S.E.2d 603 (1990), to conclude that "the messages sent to the victim did not show the defendant intended to induce

the victim to commit a criminal offense, though one message contained graphic descriptions of sexual conduct with the victim." The issue in Ford was whether appellant's offensive statement (where he said, "I want to lick your pussy") constituted idle words or represented an entreaty for action. Id. at 226, 391 S.E.2d at 604 (examining whether Ford's statements "constitute[d] a command, entreaty or attempt to persuade"). This Court concluded that the trial court was plainly wrong because Ford did not clearly possess the *intent* to solicit the two young women as his words could not be construed as a serious request, but instead were a statement to them that was simply obnoxiously offensive. The situation in Ford was significantly different than in this case. Ford did not know the two women at all to whom he made the isolated comment while in public. Ford's behavior was crude, obnoxious, and profane, but this Court concluded that it did not constitute a serious entreaty for sex. In the present case, it was reasonable for the trial court to infer from the evidence that appellant sought sexual favors from his track student – a sixteen-year-old girl with whom he had been exchanging secret text messages for some time and to whom he had developed an inappropriate attachment.

Thus, contrary to the majority's conclusion that appellant had no lascivious intent because the text message merely "described sexual conduct," I believe a rational factfinder could have found that the language used in appellant's text message went far beyond a clinical description of sex – and was sent when appellant was in a "state of mind that is eager for sexual indulgence . . . ." Campbell v. Commonwealth, 227 Va. 196, 199, 313 S.E.2d 402, 404 (1984).

C. *Appellant Proposed Sexual Activity to the Victim*

To sustain a conviction under Code § 18.2-374.3(D), one way the Commonwealth can prove an individual's guilt is by showing that the individual, with lascivious intent, "propose[d] to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361 . . . ." Code

- 11 -

§ 18.2-374.3(C)(3). Applying this deferential standard of review to the facts of this case, the text messages that appellant sent to the victim reveal a course of conduct which culminated on March 21, 2015 in a lengthy and sexually explicit text of what his daydream or fantasy about her was before he went to sleep. Before sending this text of his daydream fantasy, appellant specifically said "*right b4 I went to sleep*, had a CRAZY dream with you in it . . . ." (Italics added). Appellant was relaying a daydream or fantasy – not a literal dream that he experienced while sleeping. A rational factfinder, after reading this sexually explicit text message sent to the sixteen-year-old victim that describes multiple acts of sexual intercourse and cunnilingus, could infer that this was not just a hypothetical situation – or an idle dream – pulled out of thin air. It was, when viewed together with all of appellant's other recent text messages, the deliberate effort of a forty-year-old coach to entice his sixteen-year-old student (whom he referred to as "yo sexy self") into sexual activity with him. A rational factfinder could conclude that, in the context of appellant's relationship with the victim, the daydream text was intended as a proposal that the two engage in sexual intercourse and cunnilingus (oral sex). In addition, a rational factfinder certainly could have reasonably inferred that appellant's increasingly panicked follow-up texts were further proof that appellant's text of his daydream fantasy was a proposal to engage in sexual intercourse with the victim – as appellant determined that he had been implicitly rejected by the victim's silence.[3]

The majority argues that "the message did not entice, persuade or entreat the victim to engage in any of the proscribed conduct. It simply described sexual conduct." The sexual acts

---

[3] How the victim interpreted these texts or felt about her communications with her coach is legally irrelevant. "Criminal solicitation involves the attempt of the accused to incite another to commit a criminal offense. 'It is immaterial whether the solicitation has any effect and whether the crime solicited is in fact committed . . . . The gist of [the] offense is incitement.'" Brooker v. Commonwealth, 41 Va. App. 609, 614, 587 S.E.2d 732, 734 (2003) (quoting Branche v. Commonwealth, 25 Va. App. 480, 490, 489 S.E.2d 692, 697 (1997)) (alterations in original).

appellant described performing on the victim in the text about his daydream that he sent to the victim is just one piece of evidence to be viewed against the larger backdrop of their communications. "[I]n a circumstantial evidence case, such as the case currently before us, the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" for us to conclude that appellant entreated the victim to engage in sexual activity enumerated in Code § 18.2-374.3(C)(1)-(4). See Ervin v. Commonwealth, 57 Va. App. 495, 505, 704 S.E.2d 135, 140 (2011) (*en banc*). The majority points to this Court's decisions in Bloom v. Commonwealth, 34 Va. App. 364, 372-73, 542 S.E.2d 18, 22 (2001), and Brooker v. Commonwealth, 41 Va. App. 609, 587 S.E.2d 732 (2003), to reach the conclusion here that, because appellant's communications were via text message and not in person, the messages needed to be far more direct than they were in this case. However, Brooker and Bloom do not represent the *minimum* evidence required for conviction under Code § 18.2-374.3; these decisions simply show situations in which the evidence *is* sufficient – but not minimally sufficient. In addition, I fear that adopting the majority's view may have the unintended consequence of insulating creative offenders who seek to entice vulnerable children by using indirect commands or statements instead of words such as "I want to" or "Will you perform *x*?" I do not believe that the General Assembly intended that an offender would have to utter certain "magic words" in order to be convicted under this statute.

### III. CONCLUSION

Given our standard of review, we are obligated on appeal to uphold appellant's conviction under Code § 18.2-374.3 unless it is plainly wrong or unsupported by evidence. In sum, the evidence showed that appellant, with lascivious intent, developed a secret aspect to his relationship with the victim by texting her privately after school over a period of time. Appellant used his position as her coach to inappropriately and repeatedly text the victim messages

signaling his sexual interest in her that culminated in a highly explicit text of his daydream about her, in which appellant set out his fantasies with the victim. Given the totality of these circumstances, I simply cannot say that no rational factfinder could have inferred that appellant was entreating the victim into proscribed sexual activity with him – and, therefore, that no rational factfinder could have convicted him under Code § 18.2-374.3. For all of these reasons, I would affirm the trial court's conviction of appellant.