Present: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Koontz, S.J.

COMMONWEALTH OF VIRGINIA

OPINION BY
v. Record No. 180946          SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
                                        May 16, 2019

MARK DAVID MURGIA


FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal we determine whether the evidence adduced in a criminal trial was sufficient to sustain a conviction under Code § 18.2-374.3(D), which prohibits the use of "a communications system . . . for the purposes of soliciting, with lascivious intent," an adolescent between the ages of 15 and 18 to commit certain sexual acts as specified by Code § 18.2-374.3(C).

PROCEDURAL HISTORY

This case is before us following an appeal and remand to the Court of Appeals of Virginia, which originally decided the issue in an unpublished opinion. *Murgia v. Commonwealth*, Record No. 0788-16-1 (May 30, 2017). In that opinion, a divided panel of the Court of Appeals reversed the conviction of Mark David Murgia, in the Circuit Court of the City of Chesapeake, for the criminal solicitation of a sixteen-year-old female high school student ("A.L.") using a communications system in violation of Code § 18.2-374.3(D). Relying on *Ford v. Commonwealth*, 10 Va. App. 224 (1990), the panel majority concluded that the words used in Murgia's text messages to A.L. "standing alone" were merely expressions of his own sexual desire and did not constitute an entreaty or effort to persuade A.L. to engage in any illegal sexual conduct as required to support a conviction for a violation of Code § 18.2-374.3(D). The

dissenting member of the panel concluded that the panel majority had disregarded the standard of review by failing to defer to the findings of fact made by the trial judge in Murgia's bench trial.

The Commonwealth sought a review of the Court of Appeals' decision in this Court. While that appeal was pending, this Court issued its opinion in *Dietz v. Commonwealth*, 294 Va. 123 (2017). *Dietz* involved the application of Code § 18.2-374.3(B), which prohibits the use of "a communications system . . . for the purposes of procuring or promoting the use of a minor" for taking indecent liberties with a child or for the production of child pornography. In affirming Dietz's conviction, we concluded that the gravamen of the offense was whether "the purpose of Dietz's communication was to move forward with a scheme of taking indecent liberties with [the minor] as proscribed under Code § 18.2-370, though such crime under Code § 18.2-370 may not have yet been completed." *Id*. at 137.

Although *Dietz* involved the application of a different subsection of Code § 18.2-374.3, the rationale of our opinion upholding the conviction was potentially applicable to any act of sexual solicitation under the general scheme of that statute. Accordingly, by order entered on March 22, 2018, we granted the Commonwealth's appeal and remanded the case to the Court of Appeals to reconsider its ruling in light of our decision in *Dietz*.

Upon remand, the Court of Appeals received the parties' briefs regarding the potential application of *Dietz*. Thereafter, the Court issued an order dated June 19, 2018 stating that it "does not believe *Dietz* is applicable to this case" and again reversed Murgia's conviction for the reasons stated in the panel's original opinion of May 30, 2017.

We now consider the merits of the Commonwealth's appeal. The Commonwealth appeals from the Court of Appeals' decision reversing Murgia's conviction by its May 30, 2017 opinion and its June 19, 2018 order. The Commonwealth has assigned four errors to the decision

2

of the Court of Appeals.  However, these may be reduced to the composite issue of whether the Court of Appeals erred in finding that the evidence adduced at trial, and the reasonable inferences that the factfinder could draw therefrom, was insufficient to support Murgia's conviction for violating Code § 18.2-374.3(D).  For the reasons that follow, we hold that the evidence was sufficient to establish beyond a reasonable doubt that Murgia's communications with A.L., when viewed in the overall context of his relationship with A.L., constituted a violation of the statute.

## BACKGROUND

This case, which presents an issue of first impression with respect to the quantum of evidence required to sustain a conviction under Code § 18.2-374.3(D), necessarily involves the use of a communication system conveying sexually explicit language between an adult and an adolescent.  It is axiomatic that the nature of such communications is "inappropriate," which Murgia's counsel conceded at trial.  Indeed, such communications are repugnant to persons of common sensibilities.  We stress, however, that the issue at trial and in this appeal is not whether the communications between Murgia and A.L. were merely inappropriate and repugnant.  Rather, the issue is whether the language used, without more, would permit the trier of fact to conclude beyond a reasonable doubt that Murgia used a communications system "for the purposes of soliciting, with lascivious intent" A.L. to commit a sexual act as defined by Code § 18.2-374.3(C).

Murgia, who was forty years old, once served as a "specialty coach" for A.L.'s high school track team.  A.L. was sixteen years old, a member of that team and a cheerleader.  Murgia and A.L. had exchanged cell phone numbers and began communicating by "text messages" in

October 2014 concerning her efforts to improve her skills in the high jump.[1]  As relevant to this appeal, the Commonwealth introduced text messages recovered from A.L.'s phone involving three separate conversations on March 9, 2015, March 20, 2015, and March 21, 2015 respectively.

On the evening of March 9, 2015, A.L. texted Murgia to advise him that she had "jumped today and cleared 5'0 which was starting height . . . I would really love to work with you sometime soon bc I have to jump 5'4 by the end of outdoor cause I know I can do it."  A.L. indicated that she would likely not be able to meet with Murgia until after an upcoming track meet.  Shortly thereafter, Murgia responded, "ok sweet, we need to meet on our own also…if u can."  A.L. responded, "Yess, we do.. That's not a problem."  A.L. told Murgia that they could schedule a therapy session at the school after the track meet.  Murgia responded, "ok cool … I'm gonna stretch your tight ass legs out and loosen them hips up too," to which A.L. replied, "Okay lol that's fine.  I'm willing to do whatever I gotta do."  Murgia then told A.L. that he would work with her so long as it wasn't "too much" for her.  She responded, "It will never be too much, I know what I want and it's to clear 5'4."

A.L. texted Murgia again asking Murgia if he could be available to coach her "all the time."  Murgia responded, "Yeah I can do that boo … ill b ur secret."  A.L. responded, "I have to

---

[1] In this context, a "text message" is a written communication sent and received over a cellular phone network.  Unlike more formal writing, text messages often use acronyms, abbreviations and non-standard grammar and punctuation.  In reproducing the text messages between Murgia and A.L., we have abridged the messages to exclude graphic devices commonly known as emojis.  Although it has been noted that emojis can have significant variations in meaning according to the "dialect" used by the sender, *see* Eric Goldman, *Emojis and the Law*, 93 Wash. L. Rev. 1227, 1251 (2018), the Commonwealth did not present any testimony regarding the possible significance of the emojis used by Murgia in his communications with A.L., nor did the circuit court or the Court of Appeals place any particular significance on their use by Murgia and A.L.

get better and you're the only person I know that can focus their time just on me." Murgia responded, "I like it when u get possessive," further saying that "I like working with yo sexy self[.] Sorry if I'm blunt just keeping it real." This was the last message sent on March 9, 2015.

After competing in the track meet, A.L. again texted Murgia on March 20, 2015, seeking advice on whether she should purchase specialized high jump shoes. A.L. and Murgia exchanged five texts on this topic for just over an hour. Later that evening Murgia inquired what A.L. was doing, telling her "Im getting my sip on… Buzzin…Wish we could chill right now….Is that weird[?]lol." A.L. attempted to redirect the conversation back to her goal of jumping five feet four inches, but Murgia persisted and, in response to learning that she was watching a particular television program, texted "Wow.. So u an under cover lover lol mmmm-mmm."

The following morning, March 21, 2015, Murgia sent a text to A.L., which in relevant part read, "right b4 I went to sleep, had a CRAZY dream with u in it." Five minutes later, A.L. replied, "I wanna know details lol." Murgia then sent the following text:

> . . . ok u asked for it… Don't know where we were but we were watching TV like u said last night but we were hugged up cuddling like it was normal lol…that quickly escalated to a body message [sic] but we were both naked as the day born (awkward but strangely comfortable) …u were on your stomach and the message [sic] turned into my lips on the back of your thighs and butt… I spread your legs from behind and started slowly sucking on your kitty lips and working your clit in my mouth…u turned over and I kissed up your stomach to your breasts and gently sucked your nipples while I worked my incredibly hard dick up your thigh…I put the head against your kitty lips and slowly pushed inside you little by little until I was deep inside you…slowly long stroked that kitty, I could feel you wrapped tight around me taking me deep inside you…I was kissing your neck and you flipped me over bent over to kiss me and started slow dragging that pussy up and down my shaft like it was yours until I felt your warm cum run down my dick and I let go inside of you filling you with hot me…yeah needless to say I woke up like wtf??

When A.L. did not respond to this text, Murgia texted, "U prob like coach is a freak! . . . [D]ream came out of nowhere, sorry if that hurt your eyes while readin."

5

Although A.L. "didn't think anything of" Murgia's text message about his "dream" at the time, she subsequently showed the message to a friend after which "the police department got involved."[2] A.L. voluntarily turned her phone over to the police who used a forensic examination tool that allowed them to recover some, but not all, messages between her and Murgia from the phone in an "extraction report." Other messages, including the sexually explicit message sent March 21, 2015, were obtained by viewing them on A.L.'s phone and preparing "screenshots" which were subsequently introduced at Murgia's trial along with the extraction report. A forensic examination of Murgia's phone revealed that none of the text messages from A.L.'s phone were stored in the messaging application, and the police were unable to recover any deleted texts.

Police interviewed Murgia on March 25, 2015. Murgia initially denied having contact by phone or text message with any of the students he coached. He specifically denied having contact with any students at A.L.'s school, stating that "wouldn't even be appropriate." However, Murgia later conceded that it was "possible" he may have sent text messages to student athletes concerning physical therapy and training. When asked specifically about any messages involving stretching, Murgia said that he did text athletes about this "mainly because he was a physical therapy person." Specifically referring to A.L., Murgia said that he advised her to "make sure you stretch because you know your legs are always tight." The police then asked if he had sent a "racy text message" to A.L. Without expressly acknowledging that he had

_____

[2] The record does not disclose when or by whom the matter was brought to the attention of law enforcement. However, the police had retrieved the sexually explicit message sent by Murgia on March 21, 2015 from A.L.'s phone on or before March 24, 2015.

6

sent an inappropriate message to A.L., Murgia acknowledged that he had communicated with her.[3]

Murgia was indicted by a grand jury on August 4, 2015 on a single charge of violating Code § 18.2-374.3(D). The matter was brought to trial on November 9, 2015 before the circuit court sitting without a jury. Evidence in accord with the above recited facts was received from A.L., the police forensic expert, and the officer who interviewed Murgia. Murgia moved to strike the Commonwealth's evidence and, when that motion was overruled, elected not to put on a defense.

As relevant to this appeal, in arguing the motion to strike and in closing argument, Murgia's counsel agreed that the Commonwealth had met its burden to show that Murgia had used a communications system to send a message to A.L., who was under the age of 18, describing sexually explicit acts that fell within the ambit of the proscribed conduct under Code § 18.2-374.3(C). Conceding that the language used by Murgia was "reprehensible and awful," his counsel nonetheless maintained that the language did not constitute a solicitation of A.L. to participate in the sexual acts described in his dream. This was so, Murgia's counsel contended, because none of Murgia's words expressly "propose[d], entreat[ed], command[ed], or attempt[ed] to persuade [her] . . . to commit any of [these] sexual acts."

Distinguishing *Brooker v. Commonwealth*, 41 Va. App. 609 (2003), Murgia contended that absent express language which would incite A.L. to agree to perform a sexual act, "words alone" describing the act were not sufficient to establish solicitation. Rather, Murgia likened his words to those in *Ford*, 10 Va. App. at 228, the case ultimately relied on by the majority in the

---

[3] This evidence was introduced at trial through the testimony of the officer who had conducted the interview. During his testimony, the officer was permitted to refer to a transcript of the interview, but this transcript was not made a part of the record.

7

Court of Appeals, for the proposition that the mere expression of a sexual desire or fantasy cannot be viewed as an attempt to incite the listener to commit the act.

The Commonwealth responded that *Ford* involved a "simple statement" that, in context, was readily distinguishable from the series of communications between Murgia and A.L. Likewise, the Commonwealth disputed Murgia's assertion that *Brooker* stood for the proposition that "words alone are never enough" to constitute solicitation. Rather, in *Brooker* the Court of Appeals was affirming that solicitation arises from the context of "an adult making these suggestions to an underage individual." Thus, the trial court could "infer [Murgia's] intentions from his own statements."

In finding Murgia guilty, the trial judge considered "the conduct of the accused and whatever intent flows naturally from that conduct," and the context in which the communications took place. The trial judge expressly found that the relevant context was that Murgia, a coach, was contacting A.L. outside of regular school hours. Despite Murgia's attempt "to justify the language about stretching," the trial judge found that Murgia's statements, "I'm gonna stretch your tight ass legs out and loosen them hips up too," "I like it when u get possessive…I like working with yo sexy self" and, "Sorry if I'm blunt just keeping it real," were not typical of professional communications between a physical therapist or coach and a student athlete.

Concerning Murgia's recounting of the "extremely graphic" dream to A.L., the trial judge stated that Code § 18.2-374.3(D) did not require a specific command that the adolescent perform the sexual acts described in the text message. Accordingly, the trial judge concluded that Murgia's words, when viewed in the overall context of the coach-student relationship and Murgia's course of conduct leading up to the sexually explicit message, constituted a violation of

8

the statute. Following receipt of a pre-sentence report, the court conducted a sentencing hearing on April 21, 2016, and sentenced Murgia to ten years in prison with all time suspended.

As already detailed above, Murgia appealed his conviction to the Court of Appeals, which reversed his conviction and subsequently confirmed that decision following this Court's remand for further consideration in light of the decision in *Dietz*. Because our resolution of the primary issue in this appeal will require an examination of the Court of Appeals' rationale in reaching its decision, we will detail the substance of the Court of Appeals' opinion in the discussion below.

## DISCUSSION

*Application of Dietz*

Initially, before we address the merits of this case, we first consider the Court of Appeals' determination of the issue upon which we remanded the case to that Court for further consideration - the application of our decision in *Dietz*. Upon remand, the Court of Appeals in its June 19, 2018 order did not state its rationale for concluding that *Dietz* was inapplicable in the present case. Nonetheless, we may, by reference to the supplemental briefs filed by the parties in the Court of Appeals and to the parallel arguments made in this Court, resolve the question of whether, and how, *Dietz* may have application here.

Murgia contends that *Dietz* is inapplicable because Code § 18.2-374.3(B), the subsection at issue in that case, required proof of intent for "procuring or promoting" the participation of a minor in an act of taking indecent liberties or production of child pornography, while under subsection (D) the Commonwealth was required to show an intent of "soliciting, with lascivious intent" the performance of a proscribed sexual act. Asserting that the *mens rea* of "procuring or promoting" required a lesser proof of intent than that for "soliciting," Murgia maintains that

9

while "words alone" describing the proscribed act could satisfy the former by showing the defendant sought "to move forward with a scheme" of taking indecent liberties or producing child pornography, proof of an intent to solicit a proscribed act under subsection (D) required a direct entreaty to have the adolescent agree to perform the act. To rule otherwise, he maintains, would effectively permit the Commonwealth to prosecute him for an "attempted solicitation" and, thus reduce the Commonwealth's burden of proof below that required for solicitation, which heretofore has been the minimum required to prove the commission of an inchoate crime. *Huffman v. Commonwealth*, 222 Va. 823, 827 (1981).

The Commonwealth essentially responds that the difference in the language used in subsection (B) and subsection (D) to describe the object of each offense is a distinction without a difference. This is so, the Commonwealth contends, because *Dietz* established that the *mens rea* of both offenses is not an actual attempt to have the minor perform or be involved in a particular act. Rather, the Commonwealth is required to demonstrate the defendant used a communications system, the *actus reus*, for a particular purpose, which was the *mens rea*. *Dietz*, 294 Va. at 134-35. In this respect, the Commonwealth maintains that *Dietz* is directly on point with the present case because the Commonwealth was not required to prove that Murgia actually committed a crime of solicitation, only that he used a communications system for the purpose of soliciting the act. We agree.

While there is an obvious difference in quality between having the purpose to obtain a goal and actually obtaining that goal, the use of a communications system is the action - the *actus reus* - from which the intent - the *mens rea* - to commit the offense must be proved. The offense under Code § 18.2-374.3(D) is clearly defined as being conduct undertaken for "the purpose of soliciting, with lascivious intent, any child [the defendant] knows or has reason to

10

believe is at least 15 years of age but younger than 18 years of age to knowingly and intentionally commit" one of the proscribed offenses.

Accordingly, we are of opinion that the Court of Appeals erred in concluding in its June 19, 2018 order that the rationale of *Dietz* does not apply to a case involving Code § 18.2-374.3(D). We now turn to consider whether the Court of Appeals' original decision in its May 30, 2017 opinion that the evidence presented at Murgia's trial was insufficient to prove that his purpose in communicating with A.L. was to solicit her, with lascivious intent, to engage in the sexual acts described in his text message.

*Standard of Review*

Well established appellate principles guide our review in this case. A judgment of conviction on appeal is "presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Dietz*, 294 Va. at 132 (internal citations and quotation marks omitted). "Where the sufficiency of the evidence is challenged . . . we review fact finding with the highest degree of appellate deference." *Id.* Moreover, we accord the Commonwealth the benefit of all reasonable inferences fairly drawn from the evidence. *Murphy v. Commonwealth*, 264 Va. 568, 571 (2002).

"In such cases, this Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Furthermore, [t]hese principles apply with equal force to bench trials no differently than to jury trials." *Dietz*, 294 Va. at 123 (internal citations and quotation marks omitted).

11

As to issues of law, we apply a de novo standard of review. *Hilton v. Commonwealth*, 293 Va. 293, 299 (2017); *Grimes v. Commonwealth*, 288 Va. 314, 318 (2014). Any dispute over the proper interpretation of Code § 18.2-374.3(D) presents such an issue.

*Intent to Use a Communications System for the Purpose of Soliciting A.L.*

Undoubtedly, technologies such as social media networks, email, internet chatrooms, and text messaging are changing how society interacts and, correspondingly, changing the landscape of the law with respect to how such technology is used. New technology presents new mediums that those with criminal intent can utilize to contact and build relationships with their victims and to solicit them to commit proscribed criminal acts. While the form of evidence for committing a solicitation changes with technology, the gravamen of the offense remains the same - the "counselling, enticing or inducing another to commit a crime." *Huffman*, 222 Va. at 827. Where, as here, the use of the technology is an element of the offense, it is self-evident that in context such intent may be inferred from the "words alone" used by the accused.

Contrary to the conclusions of the Court of Appeals, the pattern of Murgia's communications shows that Murgia regularly departed from the topic of A.L.'s athletic training to discuss matters of a personal nature. The trial judge expressly stated that it was this pattern of communication, along with the dynamic of the coach-student relationship, which supports the conclusion that Murgia was soliciting A.L. to perform the acts he described. Applying the "highest degree of appellate deference" owed to the trial judge's determination of fact, we are of opinion that the evidence presented at trial plainly supports the conclusion that Murgia used a communications system for the purpose of soliciting A.L. to commit sexual acts proscribed by Code § 18.2-374.3(D). *Dietz*, 294 Va. at 132. Accordingly, we hold that the Court of Appeals erred in reversing and vacating Murgia's conviction.

CONCLUSION

For these reasons, we will reverse and vacate the decisions of the Court of Appeals in its May 30, 2017 opinion and June 19, 2018 order, and enter final judgment reinstating Murgia's conviction for violation of Code § 18.2-374.3(D).

*Reversed,*
*vacated,*
*and final judgment.*